**Dawn DURAN**

v.

**CISCO SYSTEMS, INC.;**

**and**

**related counterclaim.**

**No. CV 08–3337–CAS(RCx).**

United States District Court,
C.D. California,
Western Division.

July 1, 2009.

David E. Durchfort, Los Angeles, CA, for Plaintiff.

Carmen J. Cole, for Defendant.

## PROCEEDINGS: ORDER GRANTING, IN PART, PLAINTIFF'S MOTION TO COMPEL

ROSALYN H. CHAPMAN, United States Magistrate Judge.

On May 28, 2009, plaintiff filed her introductory statement regarding discovery dispute, a Joint Stipulation, and the supporting declaration of David E. Durchfort with exhibits;[1] on June 15, 2009, plaintiff filed her supplemental memorandum; and on June 17, 2009, defendant filed its supplemental memorandum and the supporting declarations of Linda M. Lawson and Carmen J. Cole with exhibits. Oral argument was held before Magistrate Judge Rosalyn M. Chapman on July 1, 2009.

1. The plaintiff filed her motion to compel one day late. See Declaration of Carmen J. Cole ¶¶ 2–4. Nevertheless, the Court addresses the merits of plaintiff's motion.

## BACKGROUND

On May 20, 2008, plaintiff Dawn Duran filed a complaint against Cisco Systems, Inc. Welfare Benefit Plan (erroneously sued as Cisco Systems, Inc.), raising claims for recovery of long term disability benefits and attorney's fees and costs. The plaintiff alleges she "is a plan participant or beneficiary of [a] welfare disability plan [ (Plan) ]" under the Employment Retirement Income Security Act of 1974 ("ERISA"), and defendant "is the [P]lan administrator...." Complaint ¶¶ 3–4. Commencing October 27, 2003, "[d]efendant paid plaintiff long-term disability benefits under the [P]lan" and in "November 2007, defendant terminated plaintiff's benefits claiming it was entitled to offset workers' compensation benefits plaintiff was scheduled to receive from a third party." Complaint ¶¶ 5–6. "[P]laintiff administratively appealed the termination of her benefits[,]" and on March 24, 2008, her "administrative appeal was denied" and defendant "increased the monthly offset to plaintiff's detriment." Complaint ¶¶ 7–8. Plaintiff again administratively appealed, and on May 7, 2008, "the administrative appeal was denied...." Complaint ¶¶ 9–10. Plaintiff seeks declaratory relief, past and future benefits, reasonable attorney's fees and costs.

On August 6, 2008, defendant answered plaintiff's complaint, acknowledging the Court has subject matter jurisdiction of the action under ERISA, Answer ¶ 1, and that "[p]laintiff enrolled as a participant under the terms and conditions of a Group Insurance Policy ('Policy') issued as part of an employee welfare benefit [P]lan as defined by ERISA." Answer ¶ 3. Additionally, defendant raised multiple affirmative defenses. Contemporaneously, defendant filed a counterclaim against plaintiff for breach of contract, constructive trust, and unjust enrichment/restitution, alleging plaintiff was overpaid by the Plan due to her receipt of workers' compensation benefits and she has wrongfully retained those payments in excess of what she is entitled to under the Policy/Plan. Counterclaim ¶¶ 6–7. More specifically, defendant alleges that on November 10, 2003, plaintiff "executed a Reimbursement Agreement, agreeing to, among other things, reimburse in full any overpayment of Policy benefits

resulting from an award of benefits under workers' compensation." Counterclaim ¶ 11. Accordingly, defendant alleges plaintiff has wrongfully received approximately $92,000.00 in excess of the amount due to her under the Plan. Counterclaim ¶¶ 12–14. Defendant seeks compensatory damages in the amount of the overpayment, reasonable attorney's fees and interest thereon.

On August 27, 2008, plaintiff filed a reply to defendant's counterclaim, raised the affirmative defense that the Reimbursement Agreement "was executed under duress or without consideration[,]" and filed a counter-counterclaim, raising claims for negligence and breach of fiduciary duty. In the counter-counterclaim, plaintiff alleges "Counter-defendant and its agents carelessly allowed a third person access to [plaintiff's] personal data[, which] led to attempted identity theft and tampering with [plaintiff's] national credit profile." Counter-counterclaim ¶¶ 2–3.

## DISCUSSION

 Under Rule 26(b)(1), discovery is allowed in civil actions of "any nonprivileged matter that is relevant to any party's claim or defense...." Fed.R.Civ.P. 26(b)(1). " 'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.' " *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.Cal.2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal. 1998)). The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975); *Sullivan v. Prudential Ins. Co. of Am.*, 233 F.R.D. 573, 575 (C.D.Cal.2005).

 "Rules 33 and 34 are cumulative, not alternative." *United States v. National Steel Corp.*, 26 F.R.D. 603, 606 (S.D.Tex. 1960); *Harvey v. Levine*, 25 F.R.D. 15, 17 (N.D.Oh.1960). Rule 33 of the Federal Rules of Civil Procedure provides, in part, for the serving by a party upon any other party of written interrogatories that relate to any

matters which can be inquired into under Rule 26(b). Fed.R.Civ.P. 33(a)(2). Rule 34 provides for the production of documents and things, requiring a party to produce or permit inspection of documents responsive to a request for production of documents when such documents are in the party's "possession, custody or control." Fed.R.Civ.P. 34(a)(1). "[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody, or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995), *cert. dismissed*, 517 U.S. 1205, 116 S.Ct. 1711, 134 L.Ed.2d 808 (1996); *see also United States v. Int'l Union of Petroleum and Indus. Workers, AFL–CIO*, 870 F.2d 1450, 1452 (9th Cir.1989) ("Control is defined as the legal right to obtain documents upon demand."). Accordingly, a party has an obligation to conduct a reasonably inquiry into the factual basis of its responses to discovery. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D.Cal.2006); *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 554–56 (N.D.Cal. 1987); *see also Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir.1988) ("Once a proper discovery request has been seasonably propounded, [the Court] will not allow a party sentiently to avoid its obligations by filing misleading or evasive responses, or by failing to examine records within its control.").

Here, plaintiff seeks to compel defendant to respond to nineteen interrogatories (Interrogatory nos. 1–3, 8–18, 20–21 and 26–28) and five requests for the production of documents (Request nos. 5, 7, 11, 15 and 16). Defendant, in response to each and every disputed interrogatory and document request, made General Objections, which are not set forth in the Joint Stipulation, and also made the following boilerplate objections to various interrogatories and document requests: "overbroad"; irrelevant; "burdensome, harassing and annoying"; "communications between Cisco and its counsel"; "information gathered or prepared in the anticipation of ... litigation"; "the attorney[-]client or attorney work-product privi-

leges"; "vague and ambiguous"; third party privacy rights; and "confidential and proprietary business information." As to Interrogatory nos. 1, 3, 15–16, 18 and 20 and Request nos. 5, 7, 11 and 15, defendant then stated:

> The administrative record, relative to the offset and overpayment issues, which includes the Policy, benefit information and workers' compensation settlement, Bates Stamp numbered Unum 000001 through Unum 000194, has previously been produced to Plaintiff.

*See*, e.g., Jt. Stip. at 3:9–27. As to Interrogatory nos. 8–14 and 17, defendant stated that "Cisco has conducted a diligent inquiry and is unable to provide any information responsive to this Interrogatory." *See*, e.g., Jt. Stip. at 12:7–8. In short, defendant did not respond to any of plaintiff's interrogatories or document requests.

Although defendant made numerous general and boilerplate objections to plaintiff's discovery requests, defendant discusses only one objection in the Joint Stipulation, i.e., relevancy. Thus, the Court finds defendant has waived those objections not addressed in the Joint Stipulation. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.), *cert. dismissed*, 506 U.S. 948, 113 S.Ct. 454, 121 L.Ed.2d 325 (1992); *Fresenius Med. Care Holding, Inc. v. Baxter Intern.*, 224 F.R.D. 644, 655 (N.D.Cal.2004); *Nationwide Mut. Fire Ins. v. Smith*, 174 F.R.D. 250, 251 n. 1 (D.Conn.1997). Even if not waived, such unexplained and unsupported boilerplate objections are improper. *See Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. of Mont.*, 408 F.3d 1142, 1149 (9th Cir.) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."), *cert. denied*, 546 U.S. 939, 126 S.Ct. 428, 163 L.Ed.2d 326 (2005); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); *Panola*

*Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1559 (11th Cir.1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); *A. Farber & Partners, Inc.,* 234 F.R.D. at 188 ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper-especially when a party fails to submit any evidentiary declarations supporting such objections.").

▇▇▇ As to defendant's relevancy objection, the Court, having considered all documents, finds plaintiff's discovery requests generally seek relevant information, *see Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 635 (9th Cir.2005) ("Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" (citation omitted)), although a few of the requests are beyond the scope of discovery properly allowed in an ERISA action. "The scope of discovery in an ERISA ... benefits case should serve both the goals of ERISA and the goal of obtaining justice for the parties involved in the litigation." *Medford v. Metro. Life Ins. Co.,* 244 F.Supp.2d 1120, 1128 (D.Nev.2003); *Klund v. High Tech. Solutions, Inc.,* 417 F.Supp.2d 1155, 1159 (S.D.Cal.2005). One of ERISA's primary goals is "'to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'" *Boyd v. Bert Bell/Pete Rozelle NFL Players Retirement Plan,* 410 F.3d 1173, (9th Cir. 2005) (citation omitted); *see also Medford,* 244 F.Supp.2d at 1128 ("Two of the primary goals of ERISA are to increase the likelihood beneficiaries will receive full benefits, and to maintain premium costs at a reasonable level."). "In order to balance appropriately these competing goals, discovery cannot be as broad and overreaching in ERISA cases as in other types of litigation." *Klund,* 417 F.Supp.2d at 1159; *see also Groom v. Standard Ins. Co.,* 492 F.Supp.2d 1202, 1205 (C.D.Cal.2007) (ERISA "discovery must be narrowly tailored and cannot be a fishing expedition."); *Medford,* 244 F.Supp.2d at 1128–29 ("In the context of discovery, the court should ... balance the goal of maintaining low premium costs which may be effected by limiting the scope of discovery, and thus the expense of litigation, with the demands of reaching an informed and independent review of the benefits decision."). Rather, ERISA discovery should generally be limited to information relevant to "the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record[,]" *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 965 (9th Cir.2006) (en banc); *see also Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 949–50 (9th Cir.2007) ("Because an ERISA plaintiff may be permitted to supplement the administrative record with evidence of a conflict of interest on the part of the defendant, we agree with [plaintiff] that *some* discovery aimed at demonstrating a conflict of interest may ... be[ ] appropriate." (citation omitted; emphasis in original)), as well as the proper standard of review to be applied. *Klund,* 417 F.Supp.2d at 1159–60; *Medford,* 244 F.Supp.2d at 1129.

▇▇▇ The default standard of review in an ERISA action is *de novo,* but the Court will review the decision for abuse of discretion if an ERISA plan grants discretion to the plan administrator. *Metropolitan Life Ins. Co. v. Glenn,* — U.S. —, 128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008); *Abatie,* 458 F.3d at 963. Here, the district court has not had an opportunity to rule on the appropriate standard of review in this case, and the parties do not agree on whether a *de novo* or abuse of discretion standard is applicable. *See,* e.g., Jt. Stip. at 4:10–15, 8:6–12. Therefore, discovery related to the proper standard of review is particularly appropriate.

▇▇▇ Moreover, plaintiff states that "Cisco delegated claims administration to the plan insurer, Unum Life Insurance Company of America." Intro. at 2:8–9. Since defendant does not dispute this statement, the Court accepts it as true for purposes of this discovery dispute, even though plaintiff has not attached any documents to her complaint showing the exact nature of UNUM's relationship to defendant or the Plan. *See* Declaration of David Durchfort ("Durchfort Decl.") ¶ 4, Exhibits. UNUM's dual status as claims administrator and insurer gives rise to a

conflict of interest.[2] *Glenn*, 128 S.Ct. at 2349–50; *see also Saffon*, 522 F.3d at 868 ("[The claims administrator] labors under . . . a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims."); *Fowler v. Aetna Life Ins. Co.*, 615 F.Supp.2d 1130, 1134 (N.D.Cal.2009) ("The fact that Aetna here is both the claims administrator and the payor creates a conflict of interest. . . ."); *Horton v. Phoenix Fuels. Co., Inc.*, 611 F.Supp.2d 977, 989 (D.Ariz.2009) ("[A] structural conflict does exist due to Prudential serving as both the funding source and [claims] administrator of the long-term disability-plan."); *Kushner v. Lehigh Cement Co.*, 572 F.Supp.2d 1182, 1187 (C.D.Cal.2008) ("[A]n insurer's status as both the underwriter of the Policy and the claims administrator gives rise to a structural conflict of interest[.]"). In these circumstances, relevant discovery can include requests to elicit whether an "insurance company administrator has a history of biased claims administration" or whether "the administrator has taken active steps to reduce potential bias and to promote accuracy" in its benefits decision, either "by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Glenn*, 128 S.Ct. at 2351; *see also Reinking v. Alyeska Pipeline Serv. Co.*, 2009 WL 1259385, *3 (D.Alaska) ("The *Glenn* Court gave guidance on the scope of discovery when it set out a non-exhaustive list of factors, which mirror the types of material that an ERISA plaintiff might seek to discover, including, inter alia, (1) whether the administrator has a history of biased claims administration and (2) whether the administrator had taken active steps to reduce potential bias and to promote accuracy in its benefits decisions, either by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits."); *Groom*, 492 F.Supp.2d at 1206 ("[R]elevant inquires might include inquiries designed to obtain 'evidence of malice, of self-dealing, or of a parsimonious claims-granting history.'" (quoting *Abatie*, 458 F.3d at 968)).

■■■■ Applying these standards to plaintiff's discovery requests, the Court initially notes that defendant states "the **relevant portions** of the administrative record . . . have previously been produced [to plaintiff]. . . ." Jt. Stip. at 8:10–12 (emphasis added); *see also* Jt. Stip. at 3:24–27 ("The administrative record, **relevant to the offset and overpayment issues**, . . . has previously been produced to Plaintiff." (emphasis added)). The Court infers from these statements that defendant has not produced the **whole** administrative record to plaintiff, but only the parts of the record defendant deems

---

**2.** The Court notes that UNUM has a well-chronicled history of improper claims administration. *See*, e.g., *Glenn*, 128 S.Ct. at 2351 (referring to "cases where an insurance company administrator has a history of biased claims administration" and citing John H. Langbein, *Trust Law as Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials Under ERISA*, 101 Nw. U.L.Rev. 1315, 1317–21 (Spring 2007)); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 867 (9th Cir.2008) (discussing "cupidity" of UNUM, "which boosted its profits by repeatedly denying benefits claims it knew to be valid" and noting UNUM's "internal memos revealed that the company's senior officers relied on ERISA's deferential standard of review to avoid detection and liability"); *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 137 (2d Cir.2008) ("First Unum is no stranger to the courts, where its conduct has drawn biting criticism from judges. A district court in Massachusetts wrote that 'an examination of cases involving First Unum . . . reveals a disturbing pattern

of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics.' That court listed more than thirty cases in which First Unum's denials were found to be unlawful, including one decision in which First Unum's behavior was 'culpably abusive.' Also, First Unum's unscrupulous tactics have been the subject of news pieces on '60 Minutes' and 'Dateline,' that included harsh words for the company. First Unum has fared no better in legal academia. . . . Accordingly, we find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying [plaintiff's] claim for benefits." (citations omitted)); *Carder-Cowin v. Unum Life Ins. Co. of Am.*, 560 F.Supp.2d 1006, 1013 (W.D.Wash.2008) ("[T]he Court weighs the structural conflict of interest heavily and views defendant's benefits decision with skepticism given UNUM–Provident Corp.'s parsimonious claims-granting history.").

"relevant[,]" and that is insufficient; rather, defendant must produce the entire administrative record to plaintiff. *Cf. Fowler*, 615 F.Supp.2d at 1136 n. 1. Further, the Court finds Interrogatory nos. 1, 3,[3] 15–17, 20–21 and 26 and Request nos. 5, 7, 11 and 15, which seek information about how plaintiff's benefits and subsequent offsets were determined and the relationship between defendant and UNUM, request information relevant to whether a conflict of interest exists or the proper standard of review to apply. *See,* e.g., *Abatie,* 458 F.3d at 969 n. 7 (Evidence relevant to a conflict of interest would include, for example, evidence of whether an administrator's employees have incentives to deny claims and whether the administrator's "interpretations of the plan have been consistent among patients[.]"); *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech.,* 125 F.3d 794, 799 (9th Cir. 1997) (Evidence of a serious conflict of interest may be shown by, inter alia, inconsistencies in the plan administrator's reasons for its benefits decisions.); *Klund,* 417 F.Supp.2d at 1160 (Granting discovery seeking: "(1) information necessary to demonstrate whether a conflict of interest existed between the administrators of the plan or plan fiduciaries and the plan beneficiaries, (2) if there existed such a conflict, information regarding the manner or extent to which the conflict affected Defendants in making the benefits decision, and (3) information related to the applicable standard of review."). Thus, plaintiff's motion to compel responses to Interrogatory nos. 1, 3, 15–17, 20–21 and 26 and Request nos. 5, 7, 11 and 15 should be granted.

■ On the other hand, Interrogatory nos. 2 and 28, which request, among other things, the name, address, telephone number, employment history, and educational background of every individual who determined plaintiff's benefits and setoffs, seek irrelevant information and are grossly overbroad, *see Bartholomew v. Unum Life Ins. Co.,* 579 F.Supp.2d 1339, 1340–42 (W.D.Wash.2008) (holding discovery is beyond ERISA's limita-

tions when seeking the "[n]ames and addresses of everyone … involved in processing, investigating and evaluating Plaintiff's application"); *Santos v. Quebecor World Long Term Disability Plan,* 254 F.R.D. 643, 648–51 (E.D.Cal.2009) (Denying request for "information regarding the names of persons who participated in the decision to terminate Plaintiff's benefits" since "[t]his information does not appear related to conflict of interest and the Administrative Records speaks for itself."), *as modified on reconsideration, Santos v. Quebecor World Long Term Disability Plan,* 2009 WL 1362696 (E.D.Cal. 2009); *Klund,* 417 F.Supp.2d at 1160 (denying discovery requests as "overbroad and not relevant to whether Defendants' decision-making process was affected by its dual role as insurer and administrator"), and Interrogatory no. 18 is essentially duplicative of Interrogatory no. 3. Thus, plaintiff's motion to compel responses to Interrogatory nos. 2, 18 and 28 should be denied.

■ Interrogatory no. 27 and Request no. 16 seek information about, and a copy of, every long-term disability claim "offset, reduced, diminished, eliminated or otherwise recalculated in the past 3 years," including "records showing the name of the claimant, the nature of the disability, the gross benefits payable, the initial benefits paid, the date the benefits were paid, the net change(s) to the level of benefits paid, the reasons for the change, the dates of such change, whether an appeal was taken, the basis of the appeal, the disposition of the appeal and the current level of benefits paid, if any." Jt. Stip. at 36:1–8. For the reasons discussed above, "[p]laintiff is entitled to information regarding the claims granting history[,]" *Santos,* 254 F.R.D. at 649, but this discovery is grossly overbroad and implicate third-party privacy interests. Instead, defendant can properly respond to this discovery by providing information in statistical or summary format, without identifying the third-party claimants and their identifying information. *Id.* Further, to the extent Request nos. 5, 11 and 15, which request worksheets, guidelines and

---

**3.** The Court limits Interrogatory no. 3 to the first sentence since Request nos. 5 and 11 seek relat- ed documents.

policies used to determine plaintiff's benefits and offsets and agreements governing the financial and other relationships between defendant and UNUM, request defendant's "confidential ... commercial information," Fed.R.Civ.P. 26(c)(1)(G), the Court finds documents responsive to these requests should be subject to a protective order entered into by the parties.

■ Finally, defendant responded to Interrogatory nos. 8 through 14, relating to plaintiff's counter-counterclaim, as well as interrogatory nos. 17 and 20, by stating it is unable to respond since it "is not Unum Provident...." *See,* e.g., Jt. Stip. at 12:22–23. However, defendant's responses are insufficient since it has not presented declarations or other evidence from anyone at the Plan or UNUM establishing that UNUM did not, or would not, respond to a request from defendant for information or documents, and it is not at all clear to the Court that UNUM does not have a fiduciary duty to provide responsive information to defendant when defendant requests that information. Thus, at a minimum, defendant must show it has made reasonable efforts to obtain responses to plaintiff's discovery requests from UNUM.

### ORDER

Plaintiff's motion to compel further responses to Interrogatory nos. 1, 3, 8–17, 20–21 and 26–27 and Request nos. 5, 7, 11, 15 and 16 **IS GRANTED,** as limited herein, and defendant shall respond without objection, within twenty (20) days of the date of this Order. Such response shall include any portions of plaintiff's administrative record not previously provided to plaintiff. Moreover, to assure defendant has answered each interrogatory completely, and has produced all documents responsive to each request, the Court will require defendant to provide plaintiff with a declaration or declarations detailing the factual bases of its "reasonable inquiry" to obtain information and documents from UNUM. If defendant contends that it has produced to plaintiff all documents responsive to certain document requests, it may submit a Rule 26(g) verification to that effect, referring to each specific request. Plaintiff's motion to compel further respons-es to Interrogatory nos. 2, 18 and 28 **IS DENIED.**