Mellissa **WITHERS**, et al.

v.

**EHARMONY, INC.**

No. CV 09–2266–GHK (RCx).

United States District Court, C.D. California.

Feb. 22, 2010.

J. Paul Gignac, Kiley Lynn Grombacher, Arias Ozzello and Gignac LLP, Santa Barbara, CA, Michael D. McLachlan, Michael D. McLachlan Law Offices, Mike M. Arias, Ari-

as Ozzello & Gignac LLP, Los Angeles, CA, for Mellissa Withers, Peter Schmidt.

## PROCEEDINGS: (IN CHAMBERS) OR-DER DENYING PLAINTIFF'S MO-TION FOR PROTECTIVE ORDER

ROSALYN H. CHAPMAN, United States Magistrate Judge.

On February 3, 2010, plaintiff filed a notice of motion and motion for a protective order, a joint stipulation and the supporting declaration of Michael D. McLachlan with exhibits, and defendant filed the opposing declaration of James P. Fogelman with exhibits. Neither party filed a supplemental memorandum. This matter is decided in Chambers, without oral argument, pursuant to Local Rule 7–15.

### BACKGROUND

#### I

On January 30, 2009, plaintiff Mellissa Withers filed her initial class action complaint in the Los Angeles County Superior Court against eHarmony.com, a California corporation, eHarmony, Inc., a Delaware corporation, and Does 1 through 10, and on March 2, 2009, she filed her First Amended Complaint ("FAC") against defendants,[1] on behalf of herself and all those similarly situated. The plaintiff raises the following claims in the First Amended Complaint: breach of contract; unfair and fraudulent business practices in violation of California Business & Professions Code ("B.P.C.") §§ 17200, et seq.; untrue or misleading advertising practices in violation of B.P.C. §§ 17500, et seq.; and violation of California Consumer Legal Remedies Act ("CLRA"), California Civil Code ("Civ. C") §§ 1750, et seq. The plaintiff defines the class she seeks to represent as a nationwide class consisting of:

All United States consumers who, at any time during the period from at least as early as four years prior to the filing of this complaint through the date of certifi-

---

**1.** Since eHarmony.com no longer exists, plaintiff filed a request to dismiss eHarmony.com as a defendant, and the Los Angeles County Superior Court granted that request. Notice of Removal, Exh. A at 61–65.

cation, opened accounts with Defendants for their consumer Singles Service[ ].

FAC ¶ 28. The plaintiff also seeks to certify a subclass defined as:

All California consumers who, at any time during the period from at least as early as four years prior to the filing of this complaint through the date of certification, opened accounts with Defendants for their Singles Service[ ].

FAC ¶ 29.

The gravamen of the First Amended Complaint is that defendant operates an online computer "singles matching service," the cornerstone of which is "one to one matching of male and female members. Unlike other dating services, the subscribers themselves cannot select specific members of the opposite sex or even review the larger pool [of] available opposite-sex subscribers. eHarmony selects and matches its members based on its own set of criteria." FAC ¶¶ 11–12. Subscribers pay a monthly fee for a fixed period of time to obtain opposite-sex subscribers' profiles. FAC ¶¶ 13–14. eHarmony promises its subscribers that it is "[d]ifferent" in that it uses a "patented Compatibility Matching System®" to "narrow[ ] the field from millions of candidates to a highly select group of singles that are compatible with you … based on 29 dimensions of personality that are scientifically-based predictors of long term relationship success." FAC ¶ 15. eHarmony claims that only a few matches "would make a great relationship partner" and its "Compatibility Matching System™" allows subscribers to trade the ability its competitors offer "to access a large numbers [sic] of members" for a "very few select and high-quality matches generated by eHarmony's patented matching system…." FAC ¶¶ 16–18. However, plaintiff claims "a substantial portion of eHarmony's matches involve people who are not subscribers[,]" including people "who have never been paying members as well as people … whose membership has lapsed. eHarmony does not disclose that it keeps the profiles of non-subscribers active in its database, and in fact matches them with its active subscribers." FAC ¶¶ 20–21. Plaintiff believes she was "a victim of this practice while she was a paying subscriber to

the Singles Service." FAC ¶ 21. "eHarmony makes no disclosure" to its subscribers that "the website … allow[s] inactive members to send preformatted messages to active members … for some unknown period of time after a membership expires in an attempt to entice former members to re-subscribe to the Singles Service." FAC ¶ 22. eHarmony "keeps long defunct membership profiles active, matching them with active, paying subscribers without notifying them"; thus, eHarmony "fails to disclose the true nature of its matching service, but takes affirmative steps to actively deceive it [sic] subscribers." FAC ¶¶ 23–24. As a result of the fraudulent advertising scheme, plaintiff signed up for Singles Service and paid membership dues periodically from 2007 through December of 2008. FAC ¶¶ 25–27.

Plaintiff seeks monetary and punitive damages, preliminary and permanent injunctive relief prohibiting defendant from engaging in the wrongful acts and practices set forth in the First Amended Complaint, an order restoring plaintiff and class members to all monies unjustly obtained, an order of disgorgement of defendant's wrongful profits, prejudgment and post-judgment interest, attorney's fees, and other relief. On April 1, 2009, defendant removed the action to this district court.

On June 9, 2009, District Judge George H. King denied defendant's motion to dismiss and granted, in part, defendant's motion to strike plaintiff's claims for violation of CLRA Section 1770(a)(4) and (17) and plaintiff's prayer for disgorgement, and ordered defendant to file an answer. On June 23, 2009, defendant filed an answer to plaintiff's First Amended Complaint and raised numerous affirmative defenses, and on October 20, 2009, defendant filed its First Amended Answer and raised numerous affirmative defenses.

On February 4, 2010, Peter Schmidt filed a class action complaint in intervention on behalf of himself and all those similarly situated, raising claims of: breach of contract; violation of B.P.C. §§ 17200, et seq.; and violation of CLRA, Civ. C. §§ 1750, et seq. Plaintiff Schmidt seeks to certify both national and California classes of all "Singles Ser-

vice" subscribers from January 30, 2005, to the date of class certification. Complaint ¶¶ 23–24.

## II

On November 20, 2009, plaintiff's deposition was taken, and during her deposition "Plaintiff testified that she met her current boyfriend, Stephan Nakamura, on the eHarmony web-site in November of 2008." Declaration of Michael D. McLachlan ("McLachlan Decl.") ¶ 2, Exh. 1; Declaration of James P. Fogelman ("Fogelman Decl.") ¶ 7, Exh. C. Plaintiff further testified that she started dating Mr. Nakamura in December of 2008, had more than 30 dates with him, and now has an exclusive relationship with him. Fogelman Decl. ¶ 7, Exh. C at 12:19–13:25. Finally, plaintiff stated that she moved into Mr. Nakamura's house on September 1, 2009, and currently lives with Mr. Nakamura. *Id.*, Exh. C at 11:17–12:18.

"On November 30, 2009, defendant served a notice of deposition for Mr. Nakamura for December 16, 2009[,] … [and o]n December 3, 2009, defendant served a deposition subpoena on Mr. Nakamura…." McLachlan Decl. ¶ 3, Exhs. 2 & 3; Fogelman Decl. ¶ 2. "On December 7, 2009, plaintiff's counsel informed defense counsel … that he was also representing Mr. Nakamura." Fogelman Decl. ¶ 3. Plaintiff's counsel also advised defendant's counsel he objected to Mr. Nakamura's deposition on the ground discovery against "absent class members" is prohibited, but did "not object to the deposition if it was limited to non-class-related issues." McLachlan Decl. ¶ 4, Exh. 4. Plaintiff's counsel also sought to limit Mr. Nakamura's deposition to three hours. Fogelman Decl. ¶ 3. Defendant's counsel responded that "absent a protective order in advance, [Mr. Nakamu-

ra's] deposition will go forward on December 16 until complete…." McLachlan Decl. ¶ 5, Exh. 5. Subsequently, "plaintiff's counsel informed defense counsel that he and Mr. Nakamura would not appear for the … deposition on December 16." Fogelman Decl. ¶ 6; McLachlan Decl. ¶ 9, Exh. 9.

## DISCUSSION

Under the federal rules, discovery is permitted in civil actions of "any nonprivileged matter that is relevant to any party's claim or defense…." Fed.R.Civ.P. 26(b)(1). "Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.2005) (citation omitted). "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D.Cal.2009) (citations and internal quotation marks omitted); *National Acad. of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D.Cal. 2009).

In a class action, "'[t]he party seeking [class] certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met.'" *Coles v. Nyko Tech., Inc.*, 247 F.R.D. 589, 592 (C.D.Cal.2007) (citations omitted); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 562 (C.D.Cal. 2007). Under Rule 23(a), the plaintiff must establish numerosity, commonality, typicality, and adequate representation.[2] Additionally, under Rule 23(b), the district court must also find that at least one of three conditions is satisfied.[3] Further, the plaintiff seeking to

---

2. Under Rule 23(a) district court may certify a class only if:

    (1) the class is so numerous that joinder of all members is impracticable; [¶] (2) there are questions of law or fact common to the class; [¶] (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [¶] (4) the representative parties will fairly and adequately protect the interests of the class.

    Fed.R.Civ.P. 23(a).

3. These three conditions are:

    (1) prosecuting separate actions by or against individual class members would create a risk of:

    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or [¶] (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other mem-

320

represent the class must have a "personal stake" in the outcome of the litigation or must be able to prove actual injury to himself. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). "[D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978).

■■■■ Generally, discovery from unnamed class members may be allowed only in special circumstances:

The taking of depositions of absent class members is—as is true of written interrogatories—appropriate in special circumstances. And, not unlike the use of interrogatories, the party seeking the depositions has the burden of showing necessity and absence of any motive to take undue advantage of the class members. However, in light of the nature of the deposition process—namely, the passive litigants are required to appear for questioning and are subject to often stiff interrogation by opposing counsel with the concomitant need for counsel of their own—we are of the view that the burden confronting the party seeking deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories.

*Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir.), *cert. denied*, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); *see also Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1004 (7th Cir.1971)

("[A]bsent class members may, under certain circumstances, be required to submit to discovery ...."), *cert. denied*, 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); *Baldwin & Flynn v. Nat'l Safety Assocs.*, 149 F.R.D. 598, 600 (N.D.Cal.1993) (applying *Clark* to a precertification request to depose unnamed class members).

In the motion before the Court, plaintiff seeks a protective order to limit the examination of Mr. Nakamura, as follows:

(1) that defendant may not take the deposition of absent class members without a court order; (2) that if Stephan Nakamura's deposition proceeds on non-class issues, it be limited to no more than two hours; and (3) that defendant may not inquire about anything related to Mr. Nakamura's experience with eHarmony, including his reasons for joining, his observations and experiences as a member, his communications with plaintiff or any other eHarmony member, and his reasons for quitting the service.

Notice of Motion at 2:8–14.

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ... [by] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]" Fed. R.Civ.P. 26(c)(1)(D); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir.2004) ("After a showing of good cause, the district court may issue any protective order ... 'to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' including any order prohibiting the requested discovery altogether, limiting the scope of discovery, or fixing the terms of

---

bers not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficient-

ly adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; [¶] (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; [¶] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [¶] (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b).

disclosure."), *cert. denied*, 544 U.S. 905, 125 S.Ct. 1603, 161 L.Ed.2d 279 (2005). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *Rivera*, 364 F.3d at 1063.

■ Here, plaintiff has presented no evidence that defendant seeks to depose Mr. Nakamura as an absent or putative class member.[4] *See* Jt. Stip. at 5:14–23. Rather, Mr. Nakamura is a key percipient witness with personal knowledge of plaintiff's experience with eHarmony; thus, he is more than an absent or putative class member. Moreover, Mr. Nakamura's experiences as a member of eHarmony vis-a-vis his "match" with plaintiff are relevant to plaintiff's individual claims, plaintiff's suitability and adequacy as a class representative, and determining whether plaintiff has a "personal stake" in the litigation.

Considering the foregoing, the Court addresses the three limitations plaintiff seeks in a protective order. First, the Court finds plaintiff has not shown good cause to prohibit defendant from "tak[ing] the deposition of absent class members without a court order" since plaintiff has not shown defendant seeks to depose Mr. Nakamura in his capacity as an absent class member, and there is no evidence defendant has noticed the deposition of any other absent or putative class member. Thus, the broad issue of whether defendant can depose absent class members is not before the Court, and the Court does not offer an advisory opinion on that issue. *See,* e.g., *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) ("[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights

of litigants in the case before them.' " (citation omitted)).

■ Second, the Court finds plaintiff has not shown good cause to limit the deposition of Mr. Nakamura "to no more than two hours[.]" Rule 30(d) presumptively limits the length of any deposition "to 1 day of 7 hours." Fed.R.Civ.P. 30(d)(1). However, Rule 26(b)(2) provides, in part, that "the court may alter the limits in these rules on . . . the length of depositions under Rule 30." Fed.R.Civ.P. 26(b)(2). The party seeking a court order to extend or shorten a deposition examination, or otherwise alter the deposition limitations, is expected to show good cause to justify such an order. *See* Advisory Committee Note to 2000 Amendment to Rule 30 ("Paragraph (2) imposes a presumptive durational limitation of one day of seven hours for any deposition. . . . The presumptive duration may be extended, or otherwise altered, by agreement. Absent agreement, a court order is needed. The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order."). Here, plaintiff, who has not provided Mr. Nakamura's declaration, has shown no evidence of prejudice or harm to Mr. Nakamura from a seven-hour deposition, Fed.R.Civ.P. 26(c); thus, plaintiff has not shown good cause for limiting Mr. Nakamura's deposition to two hours.

■ Third, plaintiff seeks an order that: defendant may not inquire about anything related to Mr. Nakamura's experience with eHarmony, including his reasons for joining, his observations and experiences as a member, **his communications with plaintiff** or any other eHarmony member, and his reasons for quitting the service. Notice of Motion at 2:10–14 (emphasis added). Clearly, this proposed limitation

---

4. In any event, district courts have allowed depositions of absent class members who participate in class certification procedures. *See,* e.g., *Sibley v. Sprint Nextel Corp.*, 2009 WL 3244696, *2–3 (D.Kan.); *Moreno v. Autozone, Inc.*, 2007 WL 2288165, *1 (N.D.Cal.). Under the narrow circumstances of this case, where plaintiff identified Mr. Nakamura as a percipient witness with potentially unique and valuable information regarding important class certification issues, the same

rationale should apply. Like those cases, "[t]his is not a case where discovery has been served on the majority of a largely unknown class in hopes that a failure to respond will effectively eliminate a majority of the class from continuing in the lawsuit[,]" and "nothing indicates that [eHarmony's] discovery request[ ] will take advantage of or limit the class." *Sibley*, 2009 WL 3244696, at *2.

includes information relevant to plaintiff's experiences with eHarmony. Indeed, as discussed above, Mr. Nakamura has information relevant to plaintiff's individual claims, plaintiff's suitability and adequacy as a class representative, and plaintiff's "personal stake" in the litigation, and defendant may properly examine Mr. Nakamura as a percipient witness about these topics. *Cf. Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 2006 WL 2588710, *1 (D.D.C.); *Bogosian v. Gulf Oil Corp.*, 1983 WL 1938, *1 (E.D.Pa.). Moreover, since defendant does not seek to examine Mr. Nakamura as an absent class member, as previously noted, plaintiff has not shown good cause for other parts of this proposed limitation. For all these reasons, plaintiff's motion for a protective order should be denied.

### ORDER

· Plaintiff's motion for a protective order **IS DENIED.**