Robert M. PUTNEY, Plaintiff–Appellant,

v.

MEDICAL MUTUAL OF OHIO; Medical Insurance Company of Ohio, Defendants–Appellees.

No. 02–3901.

United States Court of Appeals, Sixth Circuit.

Sept. 10, 2004.

Robert A. Perez, Cincinnati, OH, for Plaintiff–Appellant.

Jane E. Garfinkel, Thompson Hine, Cincinnati, OH, for Defendants–Appellees.

Before BATCHELDER and GIBBONS, Circuit Judges; and COHN,* District Judge.

BATCHELDER, Circuit Judge.

Robert Putney ("Putney") appeals the district court's order dismissing under Federal Rule of Civil Procedure 12(b)(6) Counts Two through Seven of Putney's Second Amended Complaint in this action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and Ohio law. Those counts allege conflict of interest and self-dealing in violation of 29 U.S.C. § 1106(a) (Count Two); failure to comply with ERISA procedural requirements (Count Three); promissory estoppel based on preauthorization (Count Four); waiver and estoppel based on history of accepted late payments (Count Five); violation of ORC § 3999.32(E) (Count Six); and violation of ORC § 1751.13(I)(2)(b) (Count Seven). Putney appeals as well the

---

* The Honorable Avern Cohn, District Judge for the Eastern District of Michigan, sitting by designation.

district court's order granting judgment on the administrative record and dismissing Count One of the Second Amended Complaint, which raises a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). Finding no reversible error, we affirm the judgments of the district court.

## I.

In 1998 Putney was an employee of Gary and Randy Wilburn, who were doing business as First Choice Rental ("First Choice"). First Choice had entered into a group contract with Medical Mutual under which Medical Mutual agreed to act as an insurer for First Choice's health benefits plan ("the Plan") and pay claims due under the Plan. The contract between First Choice and Medical Mutual consisted of the Group Contract, Schedules of Benefits, Riders, and Endorsements. Putney was covered under the Plan as an incident of his employment.

First Choice's premium payment under the Plan was due the first of each month. Benefits under the Group Contract were expressly conditioned on First Choice's timely payment of premiums. The terms of the Group Contract specifically provided that if First Choice failed to pay any required premium the Contract would "automatically" terminate "without notice" "at the end of the last period for which payment was made." First Choice paid in November 1998 the premium for coverage for the period November 1, 1998, through December 1, 1998, but failed to pay the premium due on December 1, 1998, for the period December 1, 1998, through January 1, 1999. When First Choice still had not paid this premium by December 22, 1998, Medical Mutual sent First Choice a Delinquent Notification stating that it had ten days to send the payment or Medical Mutual would terminate the contract.

On December 30, 1998, Putney underwent triple bypass surgery at Bethesda Hospital. Putney asserts in his affidavit that he obtained pre-admission authorization from Medical Mutual. Putney asserts in his brief that Medical Mutual paid Bethesda Hospital $21,980.18 on January 9, 1999.

First Choice never responded to Medical Mutual's Delinquent Notification and never paid the premium. Medical Mutual consequently notified First Choice on January 11, 1999, that the Group Contract was terminated as of December 1, 1998, the last day of the period for which First Choice had paid premiums. Under the contract, "termination" meant that the Plan did not cover any medical claims of Plan participants—meaning First Choice employees—incurred after December 1, 1998.

At some point after January 11, 1999, Putney made an application for benefits to pay for his December 30, 1998, surgery and treatment associated with that surgery. Medical Mutual denied Putney's claim. Putney states in his brief that on February 22, 1999, Medical Mutual reclaimed the $21,980.18 it had previously paid Bethesda Hospital.

## II.

The district court dismissed Counts Two through Seven pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. To the extent Putney appeals the dismissal of those claims, this Court's review is de novo. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir.1998).

### A.

Putney argues before this Court that Medical Mutual committed a per se violation of ERISA under 29 U.S.C. § 1106(b)

when it charged back or "confiscated" the money it had paid to Bethesda Hospital on Putney's account, even though Medical Mutual's contract with the hospital permitted the charge back. § 1106(b) states in pertinent part that:

A fiduciary with respect to a plan shall not-(1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b). Putney argues that once Medical Mutual segregated the funds and paid them as a benefit, the funds were no longer part of the common pool, but became "plan assets." According to Putney, therefore, when Medical Mutual confiscated the funds and returned them to the common pool, "co-mingling" the "plan assets" with its own funds, Medical Mutual was dealing on its own account in violation of § 1106(b)(1) and (3).

Putney did not allege in his Second Amended Complaint that Medical Mutual had violated § 1106(b), nor did he raise before the district court the argument that Medical Mutual "confiscated benefits" paid. Rather, before the district court, Putney complained that Medical Mutual, acting as a nonfiduciary, had engaged in self-dealing and other actions prohibited under § 1106(a). The district court dismissed this claim under Federal Rule of Civil Procedure 12(b)(6) because the complaint contained no facts even suggesting that Medical Mutual had engaged in any of the transactions prohibited by § 1106(a).

In this appeal, Putney makes no mention of § 1106(a) or the district court's disposition of this claim. Putney's attempt to now raise a claim under § 1106(b) is therefore not properly before this court.

■ But even if Putney's self-dealing claim were properly before us, we would find it meritless. Despite Putney's express denial in Count Two of the Second Amended Complaint that Medical Mutual was a fiduciary ("The Defendant Medical Mutual ... is not a fiduciary but instead is an 'interested party' under ERISA"), this claim is in substance a claim for breach of fiduciary duty. Such a claim must be brought under 29 U.S.C. § 1132(a)(3), and the Supreme Court has explicitly limited a plan participant's claim for breach of fiduciary duty under § 1132(a)(3) to claimants who could not seek a remedy under other sections of § 1132. *Varity Corp. v. Howe,* 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Here, Putney could—and in Count One of his Second Amended Complaint did—challenge Medical Mutual's denial of benefits under § 1132(a)(1)(B).

### B.

Putney argues on appeal that the district court erred in denying him discovery beyond the administrative record on his procedural challenge to Medical Mutual's denial of his benefits claim. As a general rule, in a claim to recover benefits, a court cannot consider evidence outside the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 618 (6th Cir.1998) (Gilman, J. concurring and joined by Ryan, J.); *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 381 (6th Cir.1996). There is a narrow exception, however, if additional evidence is necessary to resolve a claimant's procedural challenge to the administrator's decision to deny benefits. *Wilkins,* 150 F.3d at 618

(Gilman, J. concurring and joined by Ryan, J.). Procedural challenges to an administrator's decision include "an alleged lack of due process afforded by the administrator or alleged bias on its part." *Id.*

■ Even assuming Medical Mutual is an "administrator" under *Wilkins,* the exception does not apply here because Putney presented virtually no evidence of procedural violations. First, the district court correctly held that Putney presented absolutely no evidence of bias. The record does not reflect that he provided any facts to support a claim that discovery might lead to such evidence, and he has not revealed any such facts in the joint appendix. Putney's mere allegation of bias is not sufficient to permit discovery under *Wilkins'* exception. Second, Putney's claim that Medical Mutual refused to permit him to submit information during his administrative appeal is also a "mere allegation," insufficient to require discovery. Putney's brief before this court points to no evidence supporting his allegation that Medical Mutual did not permit him to develop the administrative record.

In support of his claim that he should have been permitted to present evidence beyond the administrative record, Putney does present evidence that Medical Mutual failed to satisfy ERISA notice requirements. That particular procedural error, however, is neither significant nor outcome determinative here. Unlike the procedural defects cited as examples in *Wilkins,* Medical Mutual's procedural failures did not prevent Putney from gaining information necessary to contest his denial of benefits. *Id.* Medical Mutual made its decision to deny Putney benefits solely by applying the Plan's termination provisions to the facts before it, including the date First Choice ceased its payment of premiums and the date Putney incurred medical expenses. Both of those dates were in the administrative record. Because Putney points to no additional evidence that either could have influenced or did influence Medical Mutual's decision to deny benefits, the district court did not err in denying Putney discovery beyond the administrative record.

## C.

Putney also argues the district court erred in dismissing his claim for promissory estoppel based on his failure to plead that the insurance policy was ambiguous. This Court has held that although equitable estoppel may be a viable theory in ERISA cases, "[p]rinciples of estoppel ... cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Sprague v. General Motors Corp.,* 133 F.3d 388, 404 (6th Cir.1998) (en banc). Consequently, a claimant must plead plan ambiguity in this Circuit to state a claim for estoppel relative to an ERISA claim for benefits. *Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 456 (6th Cir.2003).

■ Putney did not plead in his complaint, nor did he present any evidence before the district court, that the Plan was in any way ambiguous. The district court did not err in holding that the Plan is not, in fact, ambiguous, and in dismissing Putney's promissory estoppel claim under Rule 12(b)(6).

## D.

■ O.R.C. § 3999.32 is a criminal statute that provides for criminal penalties for noncompliance. Putney therefore has no standing to invoke that statute. *See Biomedical Innovations, Inc. v. McLaughlin,* 103 Ohio App.3d 122, 658 N.E.2d 1084, 1086 (1995) (holding that a claim for civil damages based on alleged violation of

criminal statute under which criminal penalties result was properly dismissed because "[c]riminal violations are brought not in the name of the individual party but rather by, and on behalf of, the state of Ohio or its subdivisions") (citing *Atlantic & Great W. Ry. Co. v. Dunn*, 19 Ohio St. 162, 172, 1869 WL 40 (1869); and *State v. Warner*, 55 Ohio St.3d 31, 564 N.E.2d 18 (1990)). Additionally, the only duty § 3999.32 imposes on the health insurer is to "notify the [employer] in writing of that [employer's] duties as described in divisions (B) and (C) of this section." § 3999.32(D). Medical Mutual did notify First Choice of its duties under § 3999.32 in its January 11, 1999 letter. Consequently, even if Putney were permitted to raise O.R.C. § 3999.32 via a fiduciary claim, his argument would have no merit because Medical Mutual fulfilled its obligations under the statute.

### E.

Putney asserts for the first time in his brief before this court that Medical Mutual violated O.R.C. § 1751.16(A)(1). Arguments not presented to the district court are generally considered We have explained that if "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," that outcome is not arbitrary and capricious. *Id.* The district court did not err in dismissing Putney's claim for benefits because the administrator's determination that the Plan terminated on December 1, 1998, the last day for which First Choice made payments, is a reasonable interpretation of the Plan's specific provisions and is supported by the evidence.

### III.

For the foregoing reasons, we AFFIRM in their entirety the judgments of the district court dismissing Putney's Second Amended Complaint.