**Judith GLUC, Plaintiff**

v.

**PRUDENTIAL LIFE INSURANCE COMPANY OF AMERICA, Defendant**

CIVIL ACTION NO. 3:14–CV–519–DJH

United States District Court,
W.D. Kentucky,
at Louisville.

Signed August 5, 2015

Michael D. Grabhorn, Andrew M. Grabhorn, Grabhorn Law Office, PLLC, Louisville, KY, for Plaintiff.

Heather C. McGregor, Paul J. Painter, Quintairos, Prieto, Wood & Boyer, PA, Louisville, KY, Ian H. Morrison, Samuel M. Schwartz–Fenwick, Seyfarth Shaw LLP, Chicago, IL, for Defendant.

### ORDER

Dave Whalin, Magistrate Judge, United States District Court

This matter comes before the Magistrate Judge to consider a motion to compel discovery filed by the Plaintiff, Judith Gluc.[1] Gluc has filed an ERISA lawsuit to recover long term disability (LTD) benefits under a disability plan provided by her employer, Geisinger Systems Services, Inc. Gluc claims that the Defendant, Prudential Insurance Company of America (Prudential), which administers the disability plan and pays claims made thereunder, wrongfully denied her LTD benefits. She has sued Prudential for breach of contract in violation of 29 U.S.C. § 1132(a)(1)(B), breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) and for disgorgement of accumulated earnings on the unpaid benefits allegedly due her pursuant to both of the cited ERISA statutes.

#### 1. Gluc's Position

Gluc claims that Prudential has an inherent conflict of interest that has resulted in its denial of her disability claim for its own financial gain. She has served Prudential with interrogatories and requests for production, which She maintains that Prudential has not adequately addressed. Prudential has declined to provide certain documents absent entry by the Court of the parties' agreed protective order. It has also objected to certain discovery requests based on its view that the present case is governed by *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir.1989) and the expedited procedures applicable to a "routine ERISA benefits case." [2]

At issue are 15 requests for production of documents and 3 interrogatories. Prudential has responded and provided supplemental responses. Gluc argues that the responses although supplemented are incomplete, evasive or substantively nonresponsive. The discovery requests in dispute fall into several groups.

Requests for production 19 and 20 seek to obtain documents related to the organizational structure of the claims and the appeal units of Prudential so that Gluc may learn the identity of those individuals actually involved in administering her LTD claim and the personnel of the respective departments. The second group of requests for production centers on Gluc's efforts to obtain documents related to the third-party medical reviewers, also referred to as vendors, used by Pruden-

---

1. DN 31, Mot. to Compel.

2. DN 37, Resp. at p. 2.

tial. These medical reviewers include: MLS Group of Companies, Inc. (MLS); Sosar Physical Therapy; Your Industrial Solution; Professional Disability Associates, LLC (PDA); Examination Management Services, Inc. (EMSI); and MES Solutions, Inc. (MES). Requests 21, 22, 23, 24, 26 and 28 respectively seek to obtain from Prudential the "contracts, draft reports, final reports, authorization to affix physician signature to a final report, dictated opinions, correspondence, e-mails, notes, diary entries and statistical reports for each of the medical reviewers identified above." [3]

The third and final group of requests at issue involves certain of the same medical reviewers. In requests 29, 30 and 31, Gluc seeks to obtain from MLS, MES and PDA respectively all of the final review reports provided to Prudential by each medical reviewer, without limitation to Gluc's claim for long term disability benefits. In other words, Gluc seeks to obtain review reports for all disability claimants who have sought benefits from Prudential. Gluc does not seek to obtain the identity or personal identifiers of these other individuals, but rather only the final reports of the reviewers with respect to their separate claims. [4]

Three interrogatories are put at issue by Gluc's motion to compel. These interrogatories, 17, 18 and 19, relate to a request for statistical information. In these three requests, Gluc seeks to learn from MLS, PDA and MES respectively the number of claimants that each reviewer found to be disabled, not disabled or partially disabled, along with the total compensation paid to each reviewer for its reviews. Finally, Gluc seeks to obtain dates to depose the three Prudential personnel that handled her claim and appeal, along with the deposition of a designated corporate representative under Rule 30(b)(6) of the Federal Rules of Civil Procedure. Gluc also asks that she be awarded attorney's fees pursuant to Rule 37(a)(5) as well.

## 2. *Prudential's Position*

Prudential responds that Gluc's discovery requests ignore the setting of the litigation— an ERISA benefits claim case. Prudential insists that in a benefits claim case under ERISA the Sixth Circuit holds that the Court's review is confined to the administrative record as of the date of the administrator's final decision denying benefits. *Kalish v. Liberty Mut.*, 419 F.3d 501 (6th Cir.2005) (citing *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378–79 (6th Cir.2005). While a limited exception does exist to this general rule in those cases in which a claimant maintains that she was denied due process in the claims review procedure, before discovery is permitted the claimant must be able to point to specific evidence of a due process violation or actual bias to be entitled to discovery. Boilerplate allegations such as those made by Gluc, according to Prudential, are not a basis to "unleash ... extensive discovery." [5] *See, Huffaker v. Metro. Life Ins. Co.*, 271 Fed. Appx. 493, 503–04 (6th Cir.2008); *Likas v. Life Ins. Co. of North Amer.*, 222 Fed.Appx. 481, 485–86 (6th Cir.2007); *Putney v. Medical Mut. of Ohio*, 111 Fed.Appx. 803, 807 (6th Cir.2004).

Because Gluc has not made such a specific showing of bias or procedural irregularity, Prudential insists that she is not entitled to the extraordinary discovery she now demands. To afford her such discovery, in the view of Prudential, would "turn ERISA and its preference for expeditious resolution of claims on its head." [6] While Prudential does not dispute that the company both administers disability claims and pays disability benefits, it argues that the Court can easily assess what weight if any is to be given to such circumstances without embarking upon a discovery fishing expedition such as that now requested.

Prudential adds that even if this Court were to determine that Gluc somehow had

---

**3.** Request for production no. 27 seeks the same information related to medical reviewer Jamie Lee Lewis.

**4.** We note however that in her requests Gluc requests that Prudential be able to provide identi-

fiers for these reports should Gluc so request at some future date.

**5.** DN 37, Resp. p. 5.

**6.** *Id.*

made the specific showing necessary to entitle her to discovery, the discovery requests she has submitted are far beyond what she would be entitled to receive under the existing precedent of the Sixth Circuit. Discovery should be limited only to the alleged lack of due process afforded by the administrator or its alleged bias. *Cooper v. Life Ins. Co. of N.A., et al,* 486 F.3d 157, 171 (6th Cir.2007). The discovery requests served by Gluc, however, go beyond information or documents that relate to Prudential's purported conflict of interest to involve various third party medical reviewers. Information concerning such other entities in Prudential's mind cannot form an appropriate basis for discovery requests, since the bias or conflict of interest alleged is limited to that of Prudential, the administrator and the payor of the disability plan.

Turning to the individual discovery requests, Prudential objects to requests 19 and 20 because the structure of its claims unit and appeal unit in its view are not relevant to the subject matter of the lawsuit or to the alleged conflict of interest as "the organizational structure of a company has no potential to show any bias or lack of due process."[7] Prudential points out that the administrative record already reveals that it has satisfied the requirement of 28 C.F.R. § 560.503–1(h)(3)(2) that the claim decision and appeal decision were handled by different persons, disability consultant Rebecca Gavbois and senior appeal analyst Deborah Cole, respectively.

Prudential also contests the efforts of Gluc via document requests 21–24 and 26–28 to obtain draft and final reports, authorizations, opinions, correspondence, e-mails, notes and statistical reports from medical reviewers MLS, PDA, EMSI and MES, as well as Sosar Physical Therapy, Your Industrial Solutions and Dr. Jamie Lewis.[8] Prudential reminds Gluc that it has already agreed to produce its contracts with the medical reviewers subject to the entry of the parties' agreed protective order by the Court. The rest of the documents and information sought, however, are clearly irrelevant to any

perceived conflict of interest according to Prudential. *Williams v. USAble Life,* No. 3:12–CV–400, 2013 WL 3387806, at *4 (S.D.Ohio July 8, 2013) (draft reports of third party vendors held to be irrelevant).

Prudential also contends that the requested documents from the third party reviewers simply are not in its possession, custody or control as required by Rule 34(a)(1). *See, In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir.1995) (requiring that a party have actual possession, custody or control or the legal right to obtain the documents on demand under Rule 34). Prudential explains it does not have actual possession of any of the requested documents, which would be found in the records of the various third-party reviewers, if they exist. Further, it denies that it has a legal right to obtain any such documents since its contracts with the medical reviewers do not provide for the production of documents on demand. Finally, to the extent that Prudential does have possession of any such documents they have already been produced with the administrative record and are otherwise not in the company's custody or control.

Prudential's arguments with respect to document requests 29–31 are similar. According to Prudential, the final copies of disability review reports prepared for other, unrelated claimants by the third-party vendors MLS, MES and PDA are entirely irrelevant. In fact, Prudential points out that the *Mullins* decision relied on by Gluc itself concludes that the treatment records of other claimants and denial of disability claim data for other claimants are not discoverable. *Mullins,* 267 F.R.D. 504, 514–23 (W.D.Ky. 2010). *See also, Jane Doe v. MAMSI Life & Health Ins. Co.,* 448 F.Supp.2d 179, 184 (D.D.C.2006) (rejecting discovery requests for the number of claims previously reviewed and denied where such information was held to be irrelevant).

Prudential holds the same view as *Mullins*—that information related to other claimants in other cases simply is not relevant to the subject matter of the present action.

7. DN 37, Resp. p. 7.

8. Request no. 27.

*Cooper,* 486 F.3d at 171; *Moore,* 458 F.3d at 430. Such information Prudential explains does not run to any alleged procedural irregularity or bias with respect to Gluc's disability claim and accordingly is not relevant or discoverable under Rule 26(b)(1). Prudential also points out that these document requests raise significant privacy concerns given that sensitive medical information about other nonparty claimants could be revealed.

Prudential explains that it does not maintain a summary record for each claim that has received an independent medical review. Compliance with document requests 29–31 therefore would force Prudential to review each and every disability claim it has processed simply to determine whether MLS, MES or PDA did provide a "final report." Such an arduous task could easily involve the review of hundreds, if not thousands, of such claim files given that Gluc does not limit her requests to disability claims arising under her former employer's disability plan.

The statistical information that Gluc seeks to obtain through interrogatories 17–19 also is irrelevant in Prudential's view. It is only the existence or nonexistence of the financial bias of Prudential as plan administrator and payor that Gluc may obtain discovery on, not the statistics that relate to the outcomes of reviews made by third-party vendors such as MLS, PDA and MES. Prudential claims that Gluc has failed to make any showing that the independent reviewing agencies have a history of bias, or that their decisions are influenced by an unwritten policy that promotes the denial of disability claims. Accordingly, the outcome of reviews of other claims by MLS, PDA and MES simply would not run to show alleged bias or lack of due process by Prudential. *Cooper,* 486 F.3d at 171.

Prudential also challenges the right of Gluc to take depositions of its employees or a corporate representative. It contends that Gluc's request for depositions rests on her claim arising under 29 U.S.C. § 1132(a)(3) which is now the subject of a motion to dismiss under Rule 12(c) of the Federal Rules of Civil Procedure. Prudential adds that Gluc does not explain how deposing its claims personnel would somehow support her claim for breach of fiduciary duty, nor does Gluc explain how a Rule 30(b)(6) deposition reasonably relates to her claim of conflict of interest. *See, Geiger v. Pfizer, Inc.,* 271 F.R.D. 577, 583 (S.D.Ohio 2010). Even in the presence of such a conflict of interest claim, Prudential notes that courts still require that discovery be limited strictly to the alleged procedural defect of the case at issue. *Myers v. Prudential Ins. Co. of Amer.,* 581 F.Supp.2d 904, 914 (E.D.Tenn.2008). Because Gluc has not shown that deposing Prudential's personnel will bear upon her allegation of a due process violation or procedural irregularity, Prudential asks that the Court deny her requests for three depositions, as well as her requests for an award of attorney's fees under Rule 37(a)(5)(A) as Gluc has not shown that Prudential's position in this matter was not substantially justified.

### *Legal Analysis.*

■ The initial question that must be addressed is whether Gluc may obtain discovery outside of the administrative record previously filed by Prudential. The general rule is that an ERISA claimant ordinarily is not entitled to obtain discovery outside of the administrative record. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 618 (6th Cir.1998). As this Court noted in *Mullins v. Prudential Ins. Co. of Amer.,* 267 F.R.D. 504, 510–11 (W.D.Ky.2010), *Wilkins* was the "judicial benchmark for discovery in ERISA cases" prior to the Supreme Court's 2008 decision in *MetLife Ins. Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). The policy behind the *Wilkins'* approach was to promote the resolution of benefits disputes as inexpensively and expeditiously as possible. *Perry v. Simplicity Engineering,* 900 F.2d 963, 967 (6th Cir. 1990); *Kasko v. Aetna Life Ins. Co.,* 33 F.Supp.3d 782, 785–86 (E.D.Ky.2014) ("[L]imitations regarding discovery furthers [sic] ERISA's primary goal; that is, the inexpensive and expeditious resolution of disputes.") (citing *Perry,* 900 F.2d at 966).

■ Discovery in ERISA cases, while limited, however, is not precluded by *Wilkins. Mullins,* 267 F.R.D. at 510 ("*Wilkins* did not close the door, however, to judicial review of matters outside the administrative record.

The decision cannot be read to prohibit discovery in ERISA cases."). Limited discovery is available, and an ERISA plaintiff may venture outside the record, when the claimant makes a satisfactory allegation of a violation of due process or bias by the plan administrator. *Id.* (citing *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F.Supp.2d 830, 832–36 (M.D.Tenn.2009) (citing *Miller v. MetLife Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991)).

■ Discovery potentially will be appropriate when a claimant "makes a procedural challenge to administrator's decision such as a challenge based on bias . . . ." *Kasko*, 33 F.Supp.3d at 786 (citing *Johnson v. Conn. Gen. Life Ins. Co.*, 324 Fed.Appx. 459, 466 (6th Cir.2009). As *Glenn* explains the Court may look outside the administrative record in such a situation to consider the circumstances that affected the administrator's alleged conflict of interest. *Glenn*, 554 U.S. at 117, 128 S.Ct. 2343. Even then, however, "discovery must be strictly confined to the procedural challenge." *Id.* (citing *Moore v. Lafayette Ins. Co.*, 458 F.3d 416, 430 (6th Cir.2006)). Discovery is required to be "tailored to facilitate the prompt resolution of the dispute." *Kasko*, 33 F.Supp.3d at 786 (citing *Price v. Hartford Life and Acc. Ins. Co.*, 746 F.Supp.2d 860, 865–66 (E.D.Mich. 2010)).

Here, Prudential questions whether Gluc has made an adequate initial threshold showing of bias by the plan administrator or a violation of due process in order to obtain the benefit of *Glenn* and go outside the administrative record to take discovery. Prudential, as noted, insists that the mere allegation of a due process violation, or the existence of bias, is insufficient to justify up ending the well-established policy of *Wilkins*. The line of cases that support this "initial threshold" requirement is set forth in *Mullins*, 267 F.R.D. at 510–511.[9] Prudential cites to these cases to argue that Gluc has failed to make a colorable showing of the existence of an al-leged procedural irregularity or bias sufficient to justify her many discovery requests.

■ This issue was directly addressed in *Mullins*. The Court noted that beyond the initial threshold cases there exists "a second series of cases referred to as the 'mere allegation' cases." *Mullins*, 267 F.R.D. at 511 (collecting cases).[10] The "mere allegation" cases hold that discovery in ERISA litigation is not dependent upon an initial threshold showing of bias or lack of due process; instead, an allegation of a due process violation or of bias is considered sufficient of itself to permit an ERISA claimant to obtain discovery into the nature of the purported bias or due process violation. *Id.* (citing *Kinsler*, 660 F.Supp.2d at 833–34).

With the rendition of *Glenn*, the Supreme Court held that a plan administrator that both evaluates a claim and pays claims operates under a per se conflict of interest in making discretionary benefit determinations. *Glenn*, 128 S.Ct. at 2351. *Glenn* continued to reject the notion that courts must create special burden-of-proof rules or other procedural or evidentiary rules focused on the evaluator/payor conflict in order to allow limited discovery. *Kasko*, 33 F.Supp.3d at 786–87. This language in *Glenn* led a number of district courts in this circuit to conclude understandably that the existence itself of the inherent conflict is sufficient to permit limited discovery. *Cramer v. Appalachian Regional Healthcare, Inc.*, No. 5:11–49–KKC, 2012 WL 996583, at *2 (E.D.Ky. Mar. 23, 2012); *Busch v. Hartford Life & Acc. Ins. Co.*, No. 5:10–111–KKC, 2010 WL 3842367, at *3 (E.D.Ky. Sept. 27, 2010); *Pemberton v. Reliance Standard Life Ins. Co.*, No. 08–86–JBC, 2009 WL 89696, at *2 (E.D.Ky. Jan. 13, 2009).

This Court in *Mullins* expressed its view that "the mere existence of an inherent conflict of interest that arises when the same

**9.** These cases include *Huffaker v. MetLife Ins. Co.*, 271 Fed.Appx. 493, 504 (6th Cir.2008); *Bradford v. MetLife Ins. Co.*, No. 3:05–CV–240, 2006 WL 1006578, at *3–4 (E.D.Tenn. Apr. 14, 2006); *Ray v. Group Long Term Disability Policy*, No. 2:06–CV–460, 2007 WL 127983 (S.D.Ohio Jan. 11, 2007); and *McInerney v. Liberty Life*

*Assur. Co. of Boston*, No. 60–2681–MAV, 2007 WL 1650498, at *2–4 (W.D.Tenn. June 4, 2007).

**10.** This line of authority includes *Moore*, 458 F.3d at 416; *Kalish*, 419 F.3d at 508; and *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286 (6th Cir.2005).

entity is both plan administrator and benefits payor is itself the 'threshold' " needed to obtain discovery so that an "ERISA plaintiff need do no more than show the existence of such an inherent conflict in order to obtain discovery." *Mullins*, 267 F.R.D. at 512 (citing *Kinsler*, 660 F.Supp.2d at 836). We therefore reject the line of cases that includes *Putney, Huffaker, Ray* and *McInerney*, which we noted in *Mullins* "has now been put to rest." *Id.*

█ Gluc is entitled to discovery. The question remains, however, what is the scope of such discovery that an ERISA plaintiff may obtain to show the impact, if any, of the alleged conflict of interest. This Court in *Mullins* discussed the inherent tension that exists in such a situation. As we explained, discovery must be sufficiently broad to permit the claimant to show how the conflict affected the benefits determination, but must be focused on issues of bias, conflict of interest and procedural due process questions. *Mullins*, 267 F.R.D. at 512–13. Fortunately, a number of recent decisions have fleshed out the permissible scope of discovery under *Glenn*.

In *Hays v. Provident Life and Acc. Life Ins. Co.*, 623 F.Supp.2d 840, 843 (E.D.Ky. 2008), the district court identified the following kinds of information as being discoverable: the history of the claims administration; any steps taken by the defendant plan administrator to reduce potential bias or promote accuracy; and the financial incentives, bonus or reward system, formal or informal, for those employees who were involved in any meaningful fashion in determining the outcome of the plaintiff's disability claims." *Id.* at 844 (citing *Myers*, 581 F.Supp.2d at 915). *See also, Raney v. Life Ins. Co. of North America*, 2009 WL 1044891, at *3 (E.D.Ky. April 20, 2009) (identifying the same factors as those set forth in *Hays* as being a proper subject for discovery).

Subsequently, in *Pemberton v Reliance Standard Life Ins. Co.*, 2009 WL 89696, at *3 (E.D.Ky. Jan. 13, 2009) the district court permitted discovery to "include statistical information about the outcome of claims submitted to reviewers...." This Court in *Mullins* also explicitly permitted discovery in

those situations in which a "plan administrator relied upon a third-party reviewers whose opinions or reports may have been unduly influenced by financial incentives...." *Mullins*, 267 F.R.D. at 513. In *Mullins*, we held that:

> Discovery may include contractual connections, annual financial payments and statistical data about the number of claims sent to the same reviewers and the number of denials resulting therefrom. *Id. Pemberton* additionally permits an ERISA plaintiff to obtain statistical data on the number of times that such reviewers found disability claimants able to work at a sedentary occupation ... or found the claimants to be not disabled from any occupation. *Id.* In fact, *Pemberton* permitted the plaintiff therein to "look back" over the history of claims administration for a period of ten years prior to the final denial of his own disability claim. The same subject areas for discovery are recognized in the *McQueen* decision as well. *McQueen* [*v. Life Ins. Co. of North America*], 595 F.Supp.2d [752] at 755–56 [ (E.D.Ky. 2009) ].

*Id.* at 513.

Several recent cases succinctly list the topics on which an ERISA plaintiff such as Gluc may obtain discovery. One of these cases is *Bird v. GTX, Inc.*, 2009 WL 3839478, at *3 (W.D.Tenn. Nov. 13, 2009), which sets forth a bullet list of areas of inquiry similar to those set forth in the *McQueen, Pemberton, Raney* and *Hays* decisions. They include:

- "incentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Myers*, 581 F.Supp.2d at 914.

- "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim ... and financial payments paid annually to the reviewers from the [administrator/payor]" *Pemberton*, 2009 WL 89696, at *3.

- "statistical data regarding the number of claims files sent to the reviewers and

the number of denials which resulted." *Id.*

- "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*
- "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claims)."

*Bird,* 2009 WL 3839478, at *3. *See also, Thornton v. Western and Southern Life Ins. Co.,* 2010 WL 411119, at *3 (W.D.Ky. Jan. 28, 2010).

*Thornton* and *Bird* also identify the categories of information that fall outside the "permitted areas of inquiry" under post-*Glenn* case law. As *Thornton* explains, "Courts typically refuse to permit discovery into areas falling under the general category of reviewer credibility." *Thornton,* 2010 WL 411119, at *3. Areas such as employee pay records and personnel files are not discoverable. *Hays,* 623 F.Supp.2d at 845 (citing *Myers,* 581 F.Supp.2d at 915). The professional background of claim reviewers; whether reviewers have civil or criminal claims for disciplinary action; or, the history of patient treatment by medical reviewers also is not subject to discovery. *Raney,* 2009 WL 1044891, at *3. *See also, Pemberton,* 2009 WL 89686, at *4 ("[I]nformation regarding the training and qualifications of the reviewers is unlikely to lead to evidence concerning either the conflict of interest or bias [so that] the plaintiff is not entitled to discovery on these issues."); *Bird,* 2009 WL 3839478, at *3 (improper areas of inquiry include: personnel files, performance reviews and pay records of insurers' employees; and information regarding training and qualifications of reviewers). With these parameters in mind, the Court now turns to the individual discovery requests put at issue by Gluc's motion to compel.

*Requests for Production of Documents.*

Before the Court considers individual document requests, it pauses to address those documents now being withheld by Prudential from production while it awaits entry of the parties' agreed protective order by the Court.[11] Prudential has declined to produce certain documents identified in its responses, despite the existence of the parties' agreed protective order, until such time as the Court enters it. This issue has been addressed by the Magistrate Judge in a separate case before the same District Judge in *Topaz v. GGNSC Louisville Hillcreek, LLC,* 3:15–CV–339–DJH.

*Topaz* also involved parties who had submitted a stipulated, proposed protective order that placed certain limitations on the use of materials produced in discovery. The Magistrate Judge, pursuant to the policy of the District Court, advised the parties in *Topaz* that entry of a protective order was not necessary as "the parties need only document the terms of their agreement and proceed with discovery."[12] As the Magistrate Judge explained in *Topaz* :

> When a protective order is necessary, it should be tendered with a motion for a protective order that sets out the reasons—including, as stated in Rule 26, good cause—why the order should be entered. Both the motion and the tendered order should describe the type(s) of documents that may require protection under Rule 26. The motion should also include a Rule 26(c) certification indicating that the parties conferred in good faith. If a dispute arises with respect to a particular document, the party seeking protection will have to establish good cause as to that document, which may require *in camera* review.
>
> Furthermore, if a party believes that certain information should be filed under seal, the party must file a separate motion demonstrating the appropriateness of the seal. The court will not sign off on materials being filed under seal simply by agreement of the parties.

*Topaz,* 3:15–CV–339–DJH (DN 13).

The same reasoning applies with equal force to the present case. The current

---

11. DN 28, Agreed Prot. Order.

12. DN 13, Order declining to enter stipulated proposed protective order.

proposed agreed protective order is effective as between the parties so that Prudential need not withhold the responsive documents it currently has in its possession. Gluc is bound by the proposed agreed order, just as Prudential is bound. The District Court in accordance with its policy on such matters will not enter an agreed protective order and need not do so to protect the interests of Prudential. All documents currently being withheld due to the absence of the entry of an agreed protective order by the Court **shall be provided to the Plaintiff within twenty (20) days of the date of entry of this order.**

We turn next to document requests 19 and 20, which respectively seek documents related to the organizational structure of Prudential's claims unit and its claims appeal unit. The Court agrees that Gluc is entitled to have a basic understanding of the organizational structure of both the claims and appeals units of Prudential. *See, Sundermeyer v. Ohio Educ. Assn. et al.,* No. 2:12– CV–959, 2013 WL 3147952, at *5 (S.D.Ohio June 19, 2013) (ERISA plaintiff entitled to discover the membership of the committee responsible for reviewing pension benefits); *Howard v. Hartford Life & Acc. Ins. Co.,* No. 3:10–CV–192–J, 2011 WL 2533800, at *6 (M.D.Fla. June 27, 2011) ("With respect to defendant's organizational structure, courts have typically found that such information is relevant."), *affirmed in part and reversed in part, Howard v. Hartford Life & Acc. Ins. Co.,* 2012 WL 3069384 (M.D.Fla. July 26, 2012). It therefore appears to the Court that the organizational structure of the claims and appeals units is fair game for discovery.

Gluc is entitled to know the employee structure of each unit to ensure that there is no substantial overlap contrary to the requirements of 29 C.F.R. § 560.503–1(h)(3)(ii). We therefore reject Prudential's objection based upon relevancy. To the extent that Prudential generally objects to both of these document requests as being vague, ambiguous and overly broad, the Court considers such objections to be merely a boilerplate and therefore insufficient. *See, In re Heparin Products Liability Litigation,* 273 F.R.D. 399, 410–411 (N.D.Ohio 2011) ("The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."); *Duran v. Cisco Systems, Inc.,* 258 F.R.D. 375, 379–380 (C.D.Cal.2009) (unexplained and unsupported "boilerplate" objections are clearly improper). *See also, Burlington Northern & Santa Fe R.R. Co. v. United States Dist. Ct. of Mont.,* 408 F.3d 1142, 1149 (9th Cir.) ("We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege."), *cert. denied* 546 U.S. 939, 126 S.Ct. 428, 163 L.Ed.2d 326 (2005).

The Court does conclude however that Prudential is not required to produce every single document within its possession, custody or control that may touch in any fashion upon the structure of the claims unit and appeals unit. The requirement of the above-cited regulation is merely to ensure that the individual who initially considers the disability claim of the claimant is not the same individual who also considers the claimant's administrative appeal from a denial of that claim. 29 C.F.R. § 560.503–1(h)(3)(ii). It therefore is sufficient if Prudential produces an organizational chart or charts, or other similar documents, identifying the personnel by name and job title in each of the two units at the time that Gluc's claim for LTD benefits was denied.

*Requests Related to Third–Party Vendors/Medical Reviewers.*

The next category of discovery requests involves third-party vendors MLS, PBA, EMSI, MES, Sosar Physical Therapy, Your Industrial Solution, and document requests 21–24, 26–28. As noted, Gluc, seeks the "contracts, draft reports, final reports, authorization to affix physician signature to final report, dictation opinions, correspondence, e-mails, notes, diary entries, [and] statistical reports" that pertain to each vendor. Prudential has agreed to supply its contracts with the vendors subject only to the entry of its proposed protective order, which the Magistrate Judge has already addressed. Otherwise, it insists that the remaining documents sought are not relevant to any pur-

ported conflict of interest citing *Williams v. USAble Life*, No. 3:12–CV–400, 2013 WL 3387806, at *4 (S.D.Ohio July 8, 2013).

■ This particular discovery dispute involving third-party medical reviewers is resolved in large part by *Mullins*. *Mullins* continues to express the view of this Court. ERISA plaintiffs are permitted to obtain discovery related to third-party vendors whose opinions or reports may have been unduly influenced by financial incentives. *Mullins*, 267 F.R.D. at 513. Discovery therefore may be obtained to reveal the compensation arrangements between the plan administrator and the third-party vendors, contractual connections, annual financial payments and statistical data about the number of claims sent to the same reviewers and the number of denials resulting therefrom. *Id.* (citing *Pemberton*, 2009 WL 89696, at *3).

As *Mullins* explains, *Pemberton* permits an ERISA plaintiff to obtain statistical data on the number of times that reviewers found disability claimants able to work at a sedentary occupation or found claimants to be not disabled from any occupation. *Id. See also*, *McQueen*, 595 F.Supp.2d at 755–56 (permitting discovery of statistical information about the outcome of claims submitted to reviewers) (citing *Crider v. Life Ins. Co. of N. Amer.*, 2008 WL 239659, at*6 (W.D.KY.2008) ("Where a financial administrator 'relied on the third-party reviewers who opinions or reports may have been unduly influenced by financial incentives, the court would benefit from information revealing the compensation arrangements in place.' "). Thus, to the extent set forth above, based on *Mullins*, Gluc is entitled to discovery related to the third-party vendors and medical reviewers. This discovery includes documents beyond merely Prudential's contract with each of the vendors/medical reviewers but only to the extent that Prudential has possession, custody or control of the requested documents.

Prudential complains that it simply does not have a legal ability to obtain much of what is requested. It denies actual possession of many of the documents including the draft reports, authorizations to affix physi-

cians' signatures to final reports, dictation opinions, correspondence and e-mails, reviewers' notes, diary entries and statistical reports.[13] Assuming such documents exist, Prudential argues that they are in the possession of the third-party vendors and the reviewing physicians. Prudential denies any legal right to obtain them based on its contracts with the same vendors and physicians.

■ Prudential is correct. Rule 34(a)(1) provides that documents, electronically stored information or tangible things are subject to production, inspection, copying, or testing only when "in the responding party's possession, custody or control." Fed. R.Civ.P. 34(a)(1). Documents will be within the possession, custody or control of a responding party "if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir.1995) (citing *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D.Colo.1992). Legal ownership of the document is not determinative under the rule. *Id.* (citing *In re Sunrise Securities Litigation*, 109 B.R. 658, 661 (E.D.Pa.1990).

■ This requirement of possession, custody or control is held to be "an essential requirement under Rule 34" so that if the requested documents are not in the possession, custody or control of the other party, then "the motion should be overruled...." *United Mercantile Agencies v. Silver Fleet Motor Express*, 1 F.R.D. 709, 712 (W.D.Ky. 1941). A party may properly respond under Rule 37 to a Rule 34 document request by stating that the documents or things requested are not within its possession, custody or control. *Beil v. Lakewood Eng. & Manuf. Co.*, 15 F.3d 546, 552 (6th Cir.1994). Here, Prudential has appropriately responded that it does not have possession, custody or control of the requested documents. In the absence of any indication otherwise, the Court is bound to accept this representation, which is a sufficient response under the rules. For that reason, the motion to compel

---

13. DN 37, Resp., p. 9.

as to these specific document requests must be denied.[14]

*Final Reports Involving Other Claimants.*

The final category of documents requests involves requests no. 29–31, which include the efforts of Gluc to obtain from third-party vendors final reports involving other disability claimants. The contested requests include, without limitation, final reports provided to Prudential by MLS, NES and PBA. In each document request, Gluc advises that the name of the claimant, his or her Social Security number and date of birth may be redacted to protect confidentiality "provided there is a means by which to identify the individual should the need arise."[15] Gluc insists that third-party vendor reports that involve efforts by other claimants' to obtain benefits are relevant to show that Prudential "uses physicians with a known propensity for supporting its claim decisions."[16] Gluc maintains that any privacy concerns expressed by Prudential will be put to rest by the redactions mentioned. Her view is that these final reports will "demonstrate the systemic flaws in Prudential's claims processes" and therefore at a minimum are relevant to her § 502(a)(3) claims.

The Court has considered similar arguments and has rejected them in the *Mullins* decision. Reports of other claimants who seek to obtain disability benefits from other employee benefit plans are not relevant. This issue was discussed in depth in *Mullins*, wherein the Court observed that:

> This notion that an ERISA plaintiff is entitled to reach out to obtain discovery on any number of LTD benefit claimants who have applied, successfully or otherwise, under the same employee benefits plan is unexplored legal territory to the Court's knowledge, at least in the context of ERISA. Neither party has cited any case law that has directly addressed this question. The court is aware of none in this circuit. Several aspects of such requests, however, are troubling to the Court.

For example, in larger employee benefit plans such a request might involve literally hundreds of claimants and require substantial effort on the part of plan administrators to marshal, organize and convey the necessary information. Additionally, this information is not necessarily relevant until one looks behind the raw data generated to determine the cause for the resulting class-wide claims history. For example, if ten GFS employees applied for LTD benefits in 2005, and none were approved, this statistical information would be insufficient of itself to support an inference that Prudential arbitrarily and capriciously denied the LTD benefit claims of all ten, or any of the ten for that matter. Without further discovery to go behind the raw data, any possible [number] of inferences might be, or might not be, supported by the data.

*Mullins,* 267 F.R.D. at 519.

The Court continues to hold this view. To require Prudential to produce all the final reports provided by the named third-party vendors would not only be unduly burdensome, given the potentially large number of such final reports, it would be of minimal relevance at best. The language of such reports and their conclusions would have little impact on the question of Prudential's alleged conflict of interest, bias or any due process violation. The fact that Gluc seeks to reserve the opportunity to go behind the face of the reports tellingly suggests that she seeks further discovery as to potentially each of the nonparty claimants.

The Court fails to see the relevance of any such reports as they relate to nonparties. Certainly Gluc is entitled to obtain reports that directly relate to her own claim for LTD benefits under her former employer's plan, but beyond that there is no sufficient reason offered to put Prudential to onerous burden of obtaining all reports that involve other claimants who seek to obtain benefits under other employee benefit plans unrelated to

---

**14.** As a result, it is not necessary for the Court to determine whether the requested documents are discoverable.

**15.** DN 31, Mot. to Compel, Ex. A, Request Nos. 29–31.

**16.** DN 40, Reply, p. 7.

Gluc's plan. For these reasons, the motion to compel is denied as to these document requests.

*Statistical Information From Third–Party Vendors.*

 Interrogatories 17, 18 and 19 request certain statistical information from MLS, PDA and MES. Specifically, the interrogatories seek as to each vendor: the number of disability claims that Prudential has retained the vendor to perform a review; the number of time the vendor's review found that a claimant was disabled, was not disabled, or was partially disabled; and the total amount of compensation Prudential paid to each vendor for its reviews. Such statistical information as the Court explained in *Mullins* is entirely discoverable by an ERISA plaintiff who challenges the impartiality of a plan administrator/payor such as Prudential based on its dual role. Regarding such third-party reviewers, this Court wrote in *Mullins* that an ERISA plaintiff is entitled to "explore the compensation arrangements between the plan administrator and such third-party reviewers." *Mullins,* 267 F.R.D. at 513. Such discovery also may include "contractual connections, annual financial payments and statistical data about the number of claims sent to the reviewers and the number of denials resulting therefrom." *Id. See also, Pemberton,* 2009 WL 89696, at *3. Prudential's claim that such statistics are irrelevant therefore ignores the holding of *Mullins* and is unpersuasive. The motion to compel is granted as to interrogatories 17–19.

*Deposition Requests.*

Gluc as noted above seeks to obtain the depositions of three Prudential employees who processed her claim for LTD benefits, as well as a Rule 30(b)(6) deposition of Prudential's corporate representative. Prudential argues that such depositions should not go forward because they rest entirely on the Plaintiff's claim under 29 U.S.C. § 1132(a)(3), her claim for breach of fiduciary duty, which is the subject of a pending motion to dismiss

filed pursuant to Rule 12(c).[17] Further, Prudential argues that Gluc has failed to offer any explanation how the deposition of Prudential's claims personnel would support her claim for breach of fiduciary duty. *See, Geiger v. Pfizer, Inc.,* 271 F.R.D. 577, 583 (S.D.Ohio 2010) (denying the request of an ERISA plan to depose a disability claim manager where such deposition would not likely lead to the discovery of relevant information).

Prudential adds that even in those instances in which the courts have permitted such discovery, it is strictly limited to the alleged procedural defects of the case at hand. *Myers,* 581 F.Supp.2d at 914. Because Gluc allegedly has failed to show how the requested depositions would relate to her allegations of conflict of interest and violation of due process, Prudential concludes that Gluc is not entitled to the depositions she now requests.

Gluc responds that the mere existence of a motion for judgment on the pleadings does not automatically stay discovery, and Prudential has not requested such a stay. Further, Gluc points out that Prudential has failed to cite any cases that hold that depositions are precluded in an ERISA action seeking disability benefits supposedly denied due to an inherent conflict of interest, bias or violation of due process.

 The Court agrees. No cases are cited by Prudential that expressly preclude the possibility of depositions in an ERISA case where the Plaintiff alleges an inherent conflict of interest. A number of decisions appear to permit such depositions when they are specifically limited to the issues of conflict of interest, bias or a due process violation. *See, Santos v. Quebecor World Long Term Disability Plan,* 254 F.R.D. 643, 648–49 (E.D.Cal.2009) (permitting a Rule 30(b)(6) deposition in an ERISA case for payment of long term disability benefits of the disability plan administrator, Hartford Life Group Insurance Company).

Indeed, other courts have granted similar motions to compel depositions in cases in

**17.** DN 30, Partial Mot. for Judgment on the Pleadings; DN 32, Resp. to DN 30; DN 33, Reply.

which an ERISA plaintiff alleged a conflict of interest inherent in the dual role of plan administrator and payor. *See, Puri v. Hartford Life & Acc. Ins. Co.,* 784 F.Supp.2d 103, 106 (D.Conn.2011) (granting the plaintiff's motion to compel the deposition of a rehabilitation clinical case manager of the defendant insurance company whom the plaintiff alleged was biased in her review due to her failure to properly assess the plaintiff's specific job duties or consider her cognitive deficits); *Crume v. MetLife Ins. Co.,* 388 F.Supp.2d 1342, 1345 (M.D.Fla. Aug. 10, 2005), *affirmed, Crume v. MetLife Ins. Co.,* 387 F.Supp.2d 1212 (M.D.Fla.2005) (denying a motion for a protective order brought by the defendant insurer to prevent the deposition of the insurer employee who made the final decision that denied the plaintiff's claim for long term disability benefits on administrative appeal where the deposition was limited to: (1) the exact nature of information considered by the fiduciary; (2) whether the fiduciary was competent to evaluate the information in the administrative record; (3) how the fiduciary reached its decision; (4) whether given the nature of the information of record it was incumbent on the fiduciary to seek outside technical assistance to made a "full and fair review" of the claim; and (5) whether a conflict of interest existed."); *Toven v. MetLife Ins. Co.,* 517 F.Supp.2d 1171, 1173 (C.D.Cal.2007) (denying the defendant insurer's motion for a protective order to prohibit the deposition of the administrator's claims representative given the inherent conflict of interest alleged by the plaintiff); *Fish v. Unum Life Ins. Co. of Amer.,* 229 F.R.D. 699, 701–02 (M.D.Fla.2005) (denying a motion for protective order filed by defendant insurer to prevent the deposition of its employees involved in the administrative denial of plaintiff's claim for LTD benefits).

Accordingly, it appears to the Court that the majority of courts to address this issue have denied the efforts of defendant insurers to prohibit depositions in ERISA actions involving plaintiffs who allege that they were wrongfully denied disability benefits due to an inherent conflict of interest arising from the dual status of the defendant as both administrator and payor of disability claims. The Court therefore shall grant the motion to compel as it relates to Gluc's efforts to obtain the aforementioned depositions.

*Attorney's Fees.*

The court has considered Gluc's request for an award of attorney's fees under Rule 37(a)(5). The Court is not prepared to say at this juncture that Prudential's arguments were not substantially justified. Indeed, the Court has denied Gluc's motion to compel is several respects. Given these circumstances, Gluc's request for an award of attorney's fees is denied. Appeal of this order is subject to the terms and time limitations of Rule 72(a) of the Federal Rules of Civil Procedure.