**Judith HANCOCK, Plaintiff,**

v.

**AETNA LIFE INSURANCE COMPANY, et al., Defendants.**

**CASE NO. C16–1697JLR**

United States District Court, W.D. Washington, at Seattle.

Signed 07/20/2017

Melton L. Crawford, Law Office of Mel Crawford, Seattle, WA, for Plaintiff.

Brittany F. Stevens, Sarah N. Turner, Gordon & Rees LLP, Erin M. Wilson, Lane Powell PC, Sarah E. Swale, Jensen Morse Baker, Seattle, WA, for Defendants.

ORDER ON DISCOVERY MOTIONS

JAMES L. ROBART, United States District Judge

## I. INTRODUCTION

Before the court are: (1) Plaintiff Judith Hancock's motion to compel discovery (MTC

(Dkt. # 44)); (2) Defendants Aetna Life Insurance Company ("Aetna"), Boeing Company Employee Health and Welfare Plan (Plan 503) ("Plan 503"), and Employee Benefit Plans Committee's ("the Committee") (collectively, "Defendants") motion for a protective order (MFPO (Dkt. # 46)); and (3) Defendants' motion to strike Aaron Pailthorp's declaration (MTS (Dkt. # 56)). The court has considered the motions, the parties' submissions in support of and opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS in part and DENIES in part Ms. Hancock's motion to compel, GRANTS in part and DENIES in part Defendants' motion for a protective order, and DENIES as moot Defendants' motion to strike Mr. Pailthorp's declaration.

## II. BACKGROUND

This case arises from Aetna's denial of long-term disability benefits ("LTD benefits") to Ms. Hancock. (*See* SAC (Dkt. # 24) ¶¶ 1.2, 4.40, 4.51.) Ms. Hancock worked at the Boeing Company ("Boeing") from 1989 until October 2012, when she took leave for cancer treatment. (Hancock Decl. (Dkt. # 31) ¶ 3.) Ms. Hancock worked as a Human Resources Generalist at the time she took leave. (*See* Admin. Record ("AR") (Dkt. # 27) at AET000272.)[2]

While at Boeing, Ms. Hancock participated in the Group Life and Accident and Health Insurance Policy ("the Plan"). (*See generally id.* at AET000001–191.) Aetna issued the Plan to Boeing (*see id.*), and Ms. Hancock alleges that Aetna is an administrator and fiduciary of the Plan as those terms are defined under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* (SAC ¶¶ 4.8–4.9). The Committee also administers the Plan. (*Id.* ¶ 4.3.) Plan 503 is an "employee benefit plan" within the meaning of ERISA. (*Id.* ¶¶ 4.2.)

The Plan defines "disabled" for purposes of LTD benefits in pertinent part:

From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:

- you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
- your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation (this is any gainful activity for which you are, or may reasonably become fitted by education training or experience. It does not include work under an approved rehabilitation program) solely because of: disease; or injury.

(*See id.* at AET000058 (emphasis omitted); *see also id.* at AET000061; SAC ¶ 4.20.)

Ms. Hancock alleges that on October 3, 2012, she became "unable to perform the material duties of her own occupation" when she underwent surgery and "extensive chemotherapy" to treat cancer. (*Id.* ¶ 4.22.) Ms. Hancock applied for short-term disability benefits under the Plan, and Aetna agreed that Ms. Hancock was disabled under the Plan and entitled to short-term disability benefits. (AR at AET000530-31.)

Aetna later found Ms. Hancock disabled for purposes of receiving LTD benefits (*id.* at AET001120–21, AET001265–66), but on February 25, 2016, Aetna terminated Ms. Hancock's LTD benefits effective February 26, 2016 (*id.* at AET000980–83). Ms. Hancock appealed the termination on August 15, 2016 (*id.* at AET001215–1589), and Aetna received Ms. Hancock's appeal on August 18, 2016 (*id.* at AET002173). In support of her appeal, Ms. Hancock provided a declaration from her doctor, her own declaration, medical records, and medical journal articles describing her condition. (*See id.* at AET001215–1589) She contends that she is disabled by the following conditions: "peripheral neuropathy and a type of cognitive impairment sometimes re-

---

1. No party requested oral argument, and the court determines that oral argument would not help the court's disposition of the motions. *See* Local Rules W.D. Wash. LCR 7(b)(4).

2. The court cites the Bates-stamped page numbers of the administrative record.

ferred to as 'chemo brain'" (SAC ¶ 4.33; *see also* AR at AET001240); Sjogren's syndrome (SAC ¶ 4.34; AR at AET001240); a lack of feeling in her fingertips and feet, burning pain in her fingertips, sharp pain in her hands, burning pain in her feet and lower legs, painful cramping in her toes and calves, and swollen ankles and feet (SAC ¶ 4.35; AR at AET001240–41). Ms. Hancock also takes a medication that causes fatigue, dizziness, difficulty concentrating, confusion, and memory issues. (SAC ¶¶ 4.37–4.38; AR at AET001241.) Because of these conditions, Ms. Hancock alleges that she is "unable to work at any reasonable occupation." (SAC ¶ 4.39.)

Under applicable ERISA regulations, Aetna had 45 days to decide Ms. Hancock's appeal unless special circumstances warranted an additional 45 days to consider the appeal. *See* 29 C.F.R. § 2560.503–1(i)(1)(i); *id.* § 2560.503–1(i)(3)(i). On September 13, 2016, Aetna confirmed with Ms. Hancock and her counsel that Aetna had received all of the records Ms. Hancock intended for Aetna to consider in her appeal. (AR at AET000992, AET002173.) On the same day, Aetna also contacted an independent third party to conduct a peer review of Ms. Hancock's file. (*Id.* at AET002189–91.) Aetna assigned the peer review on September 14, 2016. (*Id.* at AET002191.) On September 26, 2016, the fortieth day after Ms. Hancock appealed Aetna's LTD benefits determination, Aetna sent Ms. Hancock a notice that Aetna was invoking a 45-day extension to decide her appeal. (*Id.* at AET000993.) The notice informed Ms. Hancock that her appeal would be decided by November 10, 2016, and that the reason for the extension was to give the peer reviewer enough time to complete his review. (*Id.*) The peer reviewer completed his review on September 28, 2016. (*Id.* at AET002192–93.)

Aetna informed Ms. Hancock on October 20, 2016, that Aetna was upholding its decision to deny LTD benefits under the Plan. (*Id.* at AET000997–99.) "[B]ased on the clinical review and vocational review," Aetna concluded that Ms. Hancock was "no longer considered disabled from any occupation." (*Id.* at AET000982.) Aetna decided Ms. Hancock's appeal in 64 days. (*See id.* at AET000997–99.)

Ms. Hancock brings two claims under ERISA: (1) "to recover the long-term disability benefits due her under the Plan, to enforce her rights under the Plan[,] and to clarify her rights to future benefits under the Plan" (SAC ¶ 5.4); *see also* 29 U.S.C. § 1132(a)(1)(B); and (2) breach of fiduciary duty (SAC ¶¶ 5.6–5.18); *see also* 29 U.S.C. § 1132(a)(3). Ms. Hancock asserts six theories of breach of fiduciary duty: (1) unreasonably delaying and then denying Ms. Hancock's appeal; (2) unreasonably failing to investigate all of the bases on which to pay Ms. Hancock's claims and refusing to give her interests or the interests of the Plan at least as much consideration as Aetna gave its own; (3) unreasonably failing to adopt and implement reasonable standards to promptly and fairly investigate, process, and adjudicate Ms. Hancock's appeal; (4) unreasonably engaging in a selective review of the evidence to minimize the evidence supporting the continuation of benefits while focusing exclusively on evidence supporting the termination of benefits; (5) unreasonably failing to establish administrative processes and safeguards to ensure and verify appropriately consistent decisionmaking; and (6) unreasonably failing to train and supervise employees to ensure they are aware of such administrative processes and safeguards. (SAC ¶ 5.10.)

On May 3, 2017, the court denied Defendants' motion for partial summary judgment on Ms. Hancock's breach of fiduciary duty claim, concluding that Defendants had not met their burden of demonstrating as a matter of law that the timing of Aetna's decision on Ms. Hancock's appeal was reasonable. (5/3/17 Order (Dkt. # 43) at 20–21.) The court also determined that Defendants had not moved for summary judgment on any other breach of fiduciary duty theories Ms. Hancock pleads. (*Id.* at 15–16.)

The parties' dispute centers on Ms. Hancock's discovery requests related to her breach of fiduciary duty claim. The dispute requests are (1) interrogatories regarding the number of appeals under the Plan and the number of Plan participants who received

extension letters; (2) interrogatories regarding personnel information about the claims handlers who addressed Ms. Hancock's appeal and claim; (3) Aetna's claims manual; (4) depositions of current Aetna employee Douglas Burdick and former Aetna employee Kathy Leonard, both of whom worked on Ms. Hancock's appeal; (5) deposition of Dr. Aren Giske, an independent physician reviewer who evaluated Ms. Hancock's medical condition; and (6) Federal Rule of Civil Procedure 30(b)(6) depositions of Aetna and third-party vendor Professional Disability Associates, LLC ("PDA"). (*See* MTC at 5–11; Crawford Decl. (Dkt. # 45) ¶¶ 3, 5–10, Exs. 1, 4–5, 7–9; MFPO at 3–4; Stevens Decl. (Dkt. # 47) ¶¶ 2–3, Exs. A–F.)

After the court's summary judgment ruling, the parties met and conferred regarding these discovery requests but have been unable to agree on the proper scope of discovery. (*See* Crawford Decl. ¶ 2; Stevens Decl. ¶¶ 2–3.) The parties' competing discovery motions as well as Defendants' motion to strike Mr. Pailthorp's declaration are now before the court.

### III. ANALYSIS

#### A. Discovery in ERISA Cases

The parties dispute the standard that applies to discovery in ERISA cases involving a breach of fiduciary duty claim. (*See* MTC at 4; MFPO at 11.) Ms. Hancock argues that "traditional discovery rules" apply to breach of fiduciary duty claims under ERISA. (MTC at 4.) Defendants, on the other hand, contend that "[w]hen de novo review applies, the [c]ourt limits the review to the evidence in the administrative record." (MFPO at 11.)

■ Generally, plaintiffs in ERISA cases involving the denial of benefits are not entitled to discovery as "broad and over-reaching … as in other types of litigation." *Klund v. High Tech. Sols., Inc.*, 417 F.Supp.2d 1155, 1159 (S.D. Cal. 2005); *see also Medford v. Metro. Life Ins. Co.*, 244 F.Supp.2d 1120, 1128 (D. Nev. 2003) (stating that the scope of discovery in ERISA cases

"should serve both the goals of ERISA and the goal of obtaining justice for the parties involved in the litigation"). A plaintiff may, however, be entitled to additional discovery when an ERISA plaintiff alleges a breach of fiduciary duty claim under Section 1132(a)(3). *See, e.g., Jensen v. Solvay Chems., Inc.*, 520 F.Supp.2d 1349, 1355–56 (D. Wy. 2007); *Malbrough v. Kanawha Ins. Co.*, 943 F.Supp.2d 684, 692–93 (W.D. La. 2013) (discussing the trend of courts allowing limited discovery regarding Section 1132(a)(3) claims); *Moran v. Life Ins. Co. of N. Am. Misericordia Univ.*, No. 3:CV-13-765, 2014 WL 4251604, at *9 (M.D. Pa. Aug. 27, 2014) (stating that courts in the Third Circuit have concluded that discovery regarding a Section 1132(a)(3) claim is not subject to the same restrictions as discovery regarding a denial of benefits claim). Thus, "discovery beyond the administrative record may be appropriate for claims under Section 1132(a)(3) that do not arise from the written ERISA plan terms, as there may be no administrative record for such claims." *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 435 (N.D. Cal. 2014); *see also Guenther v. Lockheed Martin Corp.*, 646 Fed.Appx. 567, 570 (9th Cir. 2016) (directing that on remand, "the court should allow discovery of evidence relevant to [breach of fiduciary duty claim[ ], including evidence outside the administrative record") ]; *Coffey v. Hartford Life & Accident Ins. Co.*, 318 F.R.D. 320, 323 (W.D. Va. 2017) ("A number of district courts … have allowed limited extra-record discovery for claims under § 1132(a)(3)."). Discovery outside the administrative record is nonetheless not usually far-reaching. *See Coffey*, 318 F.R.D. at 323; *Colaco*, 301 F.R.D. at 435.

■ Even when a plaintiff is entitled to discovery beyond the administrative record in an ERISA case, the plaintiff may only "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[3] Fed. R. Civ. P. 26(b)(1).

---

**3.** Despite Ms. Hancock's contention that "[i]nformation is relevant if reasonably calculated to lead to the discovery of admissible evidence"

(MTC at 4 (internal quotation marks omitted)), "[t]he 2015 amendments to Rule 26 'eliminated the "reasonably calculated" phrase as a defini-

Whether discovery is proportional to the needs of the case hinges on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The court must limit discovery that is not proportional to the needs of the case. *See Fox v. State Farm Ins. Co.*, No. C15-0535RAJ, 2016 WL 304784, at *1 (W.D. Wash. Jan. 26, 2016).

■■■ Against this backdrop, the court analyzes the discovery motions. A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of demonstrating that the information it seeks is relevant and that the responding party's objections lack merit. *See Bluestone Innovations LLC v. LG Elecs., Inc.*, No. C-13-01770-SI (EDL), 2013 WL 6354419, at *2 (N.D. Cal. Dec. 5, 2013). The party must therefore "inform the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, No. 1:10-cv-0671-AWI-MJS, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013).

■■■ On a showing of good cause, the court may issue a protective order pursuant to Federal Rule of Civil Procedure 26(c). *See* Fed. R. Civ. P. 26(c). The party seeking the protective order must show that it will suffer "specific prejudice or harm" if the court does not issue a protective order. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *Braun v. Primary Distrib. Doe No. 1 & Does 2–69*, No. 12-3690 YGR, 2012 WL 12895845, at *2 N.D. Cal. Nov. 19, 2012 (stating that the burden is on the party seeking the protective order); *Miller v. York Risk Servs. Grp.*, No.

CV-13-01419-PHX-JWS, 2014 WL 11515634, at *2 (D. Ariz. June 20, 2014) (stating that good cause is generally shown when disclosure would lead to "a clearly defined, specific[,] and serious injury"). The protective order may prohibit the requested discovery, limit the scope of discovery, or fix the terms of disclosure. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004) (citing Fed. R. Civ. P. 26(c)).

### B. The Discovery Motions

Ms. Hancock moves to compel (1) responses to interrogatories regarding the number of appeals under the Plan and the number of Plan participants who received extension letters; (2) responses to interrogatories regarding Aetna's handling of Boeing's LTD claims; (3) production of Aetna's claims manual; and (4) depositions of Douglas Burdick, Kathy Leonard, Aren Giske, a Rule 30(b)(6) designee for Aetna, and a Rule 30(b)(6) designee for third-party PDA. (MTC at 4.) Defendants, on the other hand, move for a protective order precluding or limiting these same categories of discovery. (MFPO at 5–10.) Defendants argue that Ms. Hancock's intended discovery is unduly burdensome, duplicative, irrelevant, and not proportional to the needs of the case. (*Id.*); *see also* Fed. R. Civ. P. 26(b)(1). For each category of discovery, the court addresses whether Ms. Hancock has met her burden of compelling the discovery. If necessary, the court then addresses Defendants' request for a protective order.

#### 1. Responses to Interrogatories Regarding Appeals

■■■ Ms. Hancock's first interrogatory in this category calls on Defendants to state the number of appeals of LTD benefit denials that Aetna received from any person claiming LTD benefits under the Plan for the years 2012 through 2016. (Crawford Decl. ¶ 3, Ex. 1 (Dkt. # 45-1) at 7.) Ms. Hancock's second interrogatory requests for each such appeal that Defendants identify the number of times in each year that Aetna sent a

---

tion for the scope of permissible discovery,' " *Medicinova Inc. v. Genzyme Corp.*, No. 14cv2513-L(KSC), 2017 WL 2829691, at *5 (S.D. Cal. June 29, 2017) (quoting *In re Bard IVC Filters Prods.*

*Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016)). The court instructs Ms. Hancock's counsel to carefully review the continued applicability of all legal authority he cites to the court.

claimant an "Appeal Extension Letter," a "45 Day Extension Letter," or otherwise stated that Aetna required more time to make an appeals determination. (*Id.*) Defendants object to the interrogatories as unduly burdensome. (MTC Resp. (Dkt. # 53) at 5.) They contend that this information is difficult to obtain and seeks "confidential and private information of claims which contain medical information related to other Boeing employees who are not parties to the suit." (*Id.*)

Section 1132(a)(3)—the ERISA provision under which Ms. Hancock alleges breach of fiduciary duty—"authorizes lawsuits for individualized equitable relief." *McGlasson v. Long Term Disability Coverage for All Active Full–Time & Part–Time Emps.*, 161 F.Supp.3d 836, 842 (D. Ariz. 2016); *see also* 29 U.S.C. § 1132(a)(2) (authorizing plan-wide relief). As the court clarified in its May 3, 2017, order on partial summary judgment, Ms. Hancock seeks individualized—rather than plan-wide—relief on her breach of fiduciary duty claim. (5/3/17 Order at 14.) Accordingly, her discovery must be directed at materials related to proving a claim for individual relief.

Given that Ms. Hancock asserts an individual claim, the court concludes that these interrogatories are not relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). The identification of every appeal Aetna has received under the Plan for the past five years and how many times Aetna took additional time to decide an appeal goes beyond information Ms. Hancock needs to determine whether Aetna unreasonably delayed deciding Ms. Hancock's appeal. (*See* SAC (Dkt. # 24) ¶ 5.10.) In addition, these requests are broader than necessary given that Ms. Hancock seeks an injunction affording individual relief. (*See id.* at 17

(prayer for relief).) The court thus denies Ms. Hancock's motion to compel responses to these interrogatories.

Defendants also contend that responding to these interrogatories would require Aetna to run a report not typically run in the ordinary course of business, which would take several weeks for Aetna's team to run and filter. (MFPO at 5–6 (citing Stevens Decl., Ex. B (interrogatory response)).) In opposition to Defendants' motion for a protective order, Ms. Hancock submits the declaration of Aaron Pailthorp, a Software Test Engineer. (*See* Pailthorp Decl. (Dkt. # 50) ¶ 2.) Mr. Pailthorp avers that based on the eight Aetna "Chronological Claims notes" he reviewed (*id.* ¶ 3), he believes that the reports "could be easily and efficiently accomplished with minimal expense of time by trained staff" (*id.* ¶ 7).

Defendants move to strike Mr. Pailthorp's declaration because it lacks foundation and unfairly prejudices Defendants who have not had an opportunity to respond to the declaration.[4] (MTS at 1–2.) Because the court has determined that these interrogatories are not relevant and proportional to the needs of the case, the court does not rely on Mr. Pailthorp's declaration and denies Defendants' motion as moot.[5] *See infra.*

### 2. Aetna's Handling of Boeing's LTD Claims

Ms. Hancock next moves to compel discovery regarding Aetna personnel who manage LTD appeals. (*See* MTC at 6–7; Crawford Decl. ¶ 5, Ex. 4.) Specifically, Ms. Hancock requests that Aetna answer the following interrogatories:

INTERROGATORY NO. 1: Does Aetna have a department and/or division and/or unit for managing claims and appeals sub-

---

**4.** The court did not permit the parties to file reply briefs in support of their respective discovery motions. (5/3/17 Order at 22–23.)

**5.** In response to Mr. Pailthorp's declaration, Defendants filed a declaration from Stephen E. Simpson, an Aetna employee with knowledge of Aetna's appeal database and the necessary steps to gather information to respond to the interrogatories. (Simpson Decl. (Dkt. # 58) ¶ 2.) Ms. Hancock files a surreply in which she seeks to strike Mr. Simpson's declaration as noncompli-

ant with Local Civil Rule 7(g)(2). (Surreply (Dkt. # 60) at 1); Local Rules W.D. Wash. LCR 7(g)(2) (stating that a surreply must be filed within five days of the reply brief and shall be strictly limited to addressing the request to strike). Although Mr. Simpson's declaration goes beyond strictly addressing Defendants' request to strike, the court declines to strike Mr. Simpson's declaration because it does not rely on either Mr. Pailthorp's or Mr. Simpson's declarations in making its ruling.

mitted by employees of the Boeing Company? If your answer is anything other than an unqualified negative, please identify each and every person working in that department and/or division and/or unit, and state his or her title, for each of the following years: 2012, 2013, 2014, 2015 and 2016.

INTERROGATORY NO. 2: With respect to Douglas Burdick, Catherine Irelan, Kathy Leonard and Tyler Thornton, please describe in detail his or her employment position with Aetna, describe all training and education (including the source) each has received with respect to the processing of claims and/or appeals relating to long term disability insurance, identify their supervisors, and describe all duties and functions each performed with respect to plaintiffs appeal dated August 15, 2016.

INTERROGATORY NO. 3: Identify and describe all forms of compensation, including without limitation, any financial incentives, bonuses, commissions or other monetary awards for Douglas Burdick, Catherine Irelan, Kathy Leonard and Tyler Thornton, in each of the following years: 2012, 2013, 2014, 2015 and 2016. As to each, state the amount of base compensation and/or salary for each person for each year, and the amount of any incentive, bonus or other award for each person for each year.

INTERROGATORY NO. 4: With respect to any financial incentives, bonuses, commissions or other monetary awards Aetna paid Douglas Burdick, Catherine Irelan, Kathy Leonard and Tyler Thornton, in each of the following years: 2012, 2013, 2014, 2015 and 2016, state the criteria for any such award.

(Stevens Decl. ¶ 2, Ex. C.) Ms. Hancock also requests that Defendants produce the performance evaluations and reviews for these same four Aetna employees for the last five years. (Id.; MTC at 7.) Ms. Hancock argues that because "courts permit discovery on insurer's training, compensation[,] and employee evaluations in [Section] 1132(a)(1)(B) claims in order to explore the impact of the

insurer's bias and self-interest, such discovery should certainly proceed in breach of fiduciary duty claims under § 1132(a)(3)." (MTC at 7.) Defendants argue that the information about these employees is not proportional, would duplicate discovery Aetna has already produced, and is highly confidential. (MFPO at 7; MTC Resp. at 8.)

Because Ms. Hancock asserts that Defendants breached their fiduciary duty by failing to adequately train the employees working on Ms. Hancock's claim and appeal (SAC ¶ 5.10), the first and second interrogatories seek relevant information proportional to the needs of this case, see Fed. R. Civ. P. 26(b). In addition, Defendants have not shown specific prejudice that would arise from responding to these interrogatories. (See MFPO at 5–7.) Thus, to the extent Defendants have additional information on the subject that they have not produced, Defendants must respond to these interrogatories. Their response must describe the duties of Aetna employees who worked on Ms. Hancock's claim and appeal, what specific tasks they performed in working on Ms. Hancock's case, and the training Aetna gave them before and during the time they worked on Ms. Hancock's case. For the first interrogatory, however, Defendants need only identify individuals who worked on Ms. Hancock's case.

 Ms. Hancock's third interrogatory, fourth interrogatory, and requests for the performance reviews of the four employees, however, are not relevant and proportional to the needs of the case. Courts may allow discovery into compensation or policies regarding employee performance because it may reveal whether a conflict of interest affected a benefits denial. See Gluc v. Prudential Life Ins. Co. of Am., 309 F.R.D. 406, 413–14 (W.D. Ky. 2015); but see id. at 414 ("Areas such as ... personnel files are not discoverable."). A conflict of interest arises when, for example, a plan administrator is both the fiduciary and the sole source of funding for an unfunded plan.[6] See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 n.5 (9th Cir. 2006). An insurer's "conflict of interest is relevant to what evidence, if

---

**6.** Ms. Hancock alleges that Aetna has such a conflict, but does not expressly address a conflict

in asserting her breach of fiduciary duty claim. (See SAC ¶¶ 4.55, 5.10.)

any, district courts should consider outside of the administrative record." *See Gonda v. Permanente Med. Grp., Inc.*, 300 F.R.D. 609, 614 (N.D. Cal. 2014); *Vancleave v. Boeing Co. Non–Union Long Term Disability Plan*, No. C09-1512RSL, 2010 WL 8946093, at \*1 (W.D. Wash. June 15, 2010). Nonetheless, "discovery on an insurer's purported conflict of interest" is not always available because a conflict of interest does not have "any direct bearing on the merits analysis in a de novo review." *Gonda*, 300 F.R.D. at 614; *see also Abatie*, 458 F.3d at 963; *Waggener v. UNUM Life Ins. Co. of Am.*, 238 F.Supp.2d 1179, 1183 (S.D. Cal. 2002) (stating that the court should exercise its authority to consider additional evidence "when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision" (internal quotation marks omitted)). Here, Ms. Hancock's benefits denial claim is subject to de novo review. (*See* MFPO at 11.)

Ms. Hancock states that the discovery she seeks is solely related to her breach of fiduciary duty claim—not to her benefits denial claim. (MTC at 1–2, 4.) But Ms. Hancock asserts only one theory of breach of fiduciary duty that touches on a purported conflict, alleging that Defendants did not give Ms. Hancock's interests as much consideration as they gave their own in deciding her appeal. (SAC ¶ 5.10.) Because Ms. Hancock's discovery regarding a conflict is only marginally related to her breach of fiduciary duty claim, the court concludes that Ms. Hancock has not met her burden of compelling this discovery. Her request for wide-ranging discovery regarding compensation and private personnel information is disproportional to the needs of the case.[7] *See* Fed. R. Civ. P. 26(b)(1). Indeed, Ms. Hancock "seek[s] discovery on the off chance that she will uncover a conflict of interest," *Vancleave*, 2010 WL 8946093, at \*2, and this discovery will only minimally—if at all—assist in resolving Ms. Hancock's breach

of fiduciary duty claim, Fed. R. Civ. P. 26(b)(1). This discovery is therefore not proportional to the needs of the case, and the court denies the motion to compel responses to these interrogatories.

3. Aetna's Claims Manuals

Ms. Hancock further moves to compel Defendants to produce Aetna's claims manuals with respect to disability claims and appeals. (MTC at 7–8; Crawford Decl. ¶ 6, Ex. 5.) Ms. Hancock's request "includes, without limitation, any and all internal rules, standards, or guidelines in effect from January 1, 2015 to the present, with respect to: (a) the handling, processing and administration of long-term disability claims; (b) the handling, processing and administration of long-term disability appeals; (c) the hiring, retaining or commissioning of outside medical professionals to perform examinations and/or document reviews." (Crawford Decl. ¶ 6, Ex. 5 at 4.) Defendants state that they "have produced the relevant policies and procedures related to the handling of claim appeals," but contend that "[p]roduction of additional policies and procedures is not relevant to [Ms. Hancock's] claim." (MTC Resp. at 8.) Defendants state that "the only documents potentially relevant are those directly related to Plaintiff and the handling of her appeal." (*Id.* at 9; *see also* MFPO at 6 (arguing the same)).

The court grants Ms. Hancock's motion to compel Aetna's guidelines regarding LTD claims and appeals and hiring outside medical professionals to perform examinations and reviews to the extent Aetna has not already produced such materials. However, Defendants need only produce such policies that were in place during the evaluation of Ms. Hancock's claim and appeal. These materials are relevant to Ms. Hancock's allegations that Defendants breached their fiduciary duty by failing to adopt and implement

---

7. In support of her motion to compel, Ms. Crawford submits an order from the District Court for the District of Arizona. (*See* Crawford Decl. ¶ 19, Ex. 17 (*Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*, No. CV–15–01547–PHX–DLR, Dkt. # 60, 2016 WL 107838 (D. Ariz. Jan. 28, 2016)).) In that case, the court allowed discovery "pertaining to job descriptions, W–2s and/or W–9s, employee performance goals and targets, and compensation plans." *Mullin*, No. CV–15–01547–PHX–DLR, 2016 WL 107838, Dkt. # 60 at 5. Here, however, Ms. Hancock seeks specific performance evaluations and reviews from the four employees' personnel records. (*See* Stevens Decl. ¶ 2, Ex. C.)

reasonable standards to promptly and fairly investigate her appeal, to establish administrative processes and safeguards to promote consistent decisionmaking, and to investigate all of the bases on which Ms. Hancock's claims were based. (SAC ¶ 5.10.) In addition, the court determined in ruling on summary judgment that Defendants failed to demonstrate as a matter of law that Aetna's use of a medical peer review in deciding Ms. Hancock's appeal constituted a special circumstance justifying delay of the appeals decision by 45 days. (*See* 5/3/17 Order at 20–21.) Limiting the discovery to those policies in place at the time her claim and appeal were pending adequately addresses Defendants' concerns that discovery of the entire claims manual is not proportional to the needs of the case.[8] (MFPO at 6.)

#### 4. Depositions

Finally, Ms. Hancock seeks to depose five individuals: (1) Douglas Burdick, an Aetna employee; (2) Kathy Leonard, a former Aetna employee; (3) Aren Giske, a physician who conducted Ms. Hancock's outside medical review; (4) a Rule 30(b)(6) designee for Aetna; and (5) a Rule 30(b)(6) designee for non-party PDA. As with other discovery, Rule 26(b)(1) provides the appropriate scope for depositions. *See New Show Studios v. Needle*, No. CV 14–1250 CAS (MRWx), 2016 WL 6901692, at \*2 (C.D. Cal. Jan. 4, 2016).

##### a. Aetna Employees

 In their initial disclosures, Defendants stated that Mr. Burdick and Ms. Leonard have knowledge regarding Ms. Hancock's benefits claim, appeal of the denial of her benefits, and Aetna's application of policies and procedures to the claims handling and appeals processes. (*See* MTC at 9–10 (citing Crawford Decl. ¶ 6, Ex. 6 at 2).) Defendants contend that depositions of Mr. Burdick and

Ms. Leonard, who is retired, would be duplicative and burdensome because Defendants have already produced "sufficient information" regarding Aetna's handling of Ms. Hancock's claim and appeal and Aetna's policies and procedures. (MTC Resp. at 10.) Because Aetna has already produced policies and procedures regarding claims handling, Defendants contend that "there is nothing further to which these two individuals could testify that would be relevant to [Ms. Hancock's] breach of fiduciary duty claim." (MFPO at 8.)

The court grants Ms. Hancock's motion to compel Mr. Burdick's and Ms. Leonard's depositions. The information to which Mr. Burdick and Ms. Leonard would testify is relevant and proportional, given Ms. Hancock's theories of breach of fiduciary duty. (*See* SAC ¶ 5.10; MTC at 9–10 (citing Crawford Decl. ¶ 6, Ex. 6 at 2).) Further, Defendants have not met their burden of demonstrating specific prejudice arising from these depositions, and Defendants have not adequately shown that Mr. Burdick's and Ms. Leonard's testimony would duplicate written discovery.

##### b. Dr. Aren Giske

 Ms. Hancock also seeks to depose Dr. Aren Giske, the outside physician who independently reviewed Ms. Hancock's file. (MTC at 10.) Ms. Hancock contends that Dr. Giske has information relevant to her breach of fiduciary duty claim because she alleges that Aetna selectively reviewed the evidence in deciding her appeal. (*Id.*) Because Dr. Giske reviewed Ms. Hancock's file for Aetna, the court agrees that he has information relevant to Ms. Hancock's breach of fiduciary duty claim. Further, the deposition is proportional given its importance in resolving the issues, even when balanced against the expense Defendants say they will incur in defending this deposition.[9] *See* Fed. R. Civ. P. 26(c)(1); (Stevens Decl. ¶ 9.) Although Defen-

---

8. Defendants further state that if the court orders them "to produce the entire claims manual, Defendants request a protective order to protect Aetna's confidential[ ], proprietary, and financial information." (MFPO at 7 (internal footnote omitted).) Defendants may so move should the materials they must provide to Ms. Hancock contain confidential or proprietary information. The court encourages Defendants to use the model protective order for the Western District of

Washington and file a protective order agreed upon with Ms. Hancock, if possible.

9. The court notes that Defendants' counsel's estimate of the cost to depose Dr. Giske may be overestimated if Dr. Giske resides in Gig Harbor, Washington, as Ms. Hancock's counsel avers. (*Compare* Stevens Decl. ¶ 9, *and* MFPO at 8, *with* MFPO Resp. (Dkt. # 49) at 8 (citing 2d Crawford Decl. (Dkt. # 51) ¶ 6).)

dants answered interrogatories and produced documents related to Dr. Giske's review (*see* Stevens Decl. ¶ 3, Ex. A), Defendants have not adequately demonstrated that "Dr. Giske has nothing further to testify to related to the claim for breach of fiduciary duty" (MFPO at 8). For example, Dr. Giske could testify to how he applied Aetna's guidelines to his review of Ms. Hancock's file and which evidence he considered in completing his review. For these reasons, the court grants Ms. Hancock's motion to compel Dr. Giske's deposition.

### c. *Rule 30(b)(6) Designees*

 Ms. Hancock also seeks to depose Rule 30(b)(6) representatives from Aetna and PDA. (MTC at 10–11.) Ms. Hancock's deposition of Aetna's designee will address training and supervision of employees and guidelines and instruction Aetna provides to entities with whom it contracts to conduct medical reviews. (*Id.* at 11 (citing Crawford Decl. ¶ 7, Ex. 9).) Ms. Hancock's deposition of PDA will address the company's financial arrangements with Aetna, instructions Aetna gives to PDA, and PDA's marketing. (*Id.*) Ms. Hancock states only that "[t]hese two depositions seek information relevant to Ms. Hancock's breach of fiduciary duty claims." (*Id.*) Defendants contend that these depositions are not proportional and to the extent they are relevant, Ms. Hancock can more effectively pursue this information through written discovery. (MTC Resp. at 11; Stevens Decl. ¶ 9.)

Rule 30(b)(6) permits a party to depose an entity after "describ[ing] with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The entity "must then designate one or more officers ... to testify on its behalf" regarding "information known or reasonably available" to the entity. *Id.* The court concludes that Ms. Hancock has not met her burden of demonstrating that these depositions are appropriate at this time. There is presently no indication that the written discovery regarding Aetna's training and supervision of its employees during the period Ms. Hancock's claim and appeal were pending is insufficient. In addition, the information Ms. Hancock seeks

from PDA is not relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). PDA's marketing and financial arrangements are only marginally likely to shed light on Ms. Hancock's breach of fiduciary duty claim when viewed in terms of the expense of conducting the deposition. (*See* Stevens Decl. ¶ 9.) In addition, the court granted Ms. Hancock's request for Aetna's policies about third-party vendors from Aetna itself, and any further inquiry into that issue is duplicative.

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS in part and DENIES in part Ms. Hancock's motion to compel (Dkt. # 44), GRANTS in part and DENIES in part Defendants' motion for a protective order (Dkt. # 46), and DENIES as moot Defendants' motion to strike the declaration of Aaron Pailthorp (Dkt. # 56).